

1   Elwood Lui (State Bar No. 45538)
    Christopher Lovrien (State Bar No. 230546)
2   JONES DAY
    555 South Flower Street
3   Fiftieth Floor
    Los Angeles, CA 90071-2300
4   Telephone:  (213) 489-3939
    Facsimile:  (213) 243-2539
5   cjlovrien@jonesday.com

6   Attorneys for Defendant
    County of Los Angeles
7

8



```
          FILED
CLERK, U.S. DISTRICT COURT

      MAY - 9 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY
```

9                UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

                SACV11-00707 JVS(RHB)

11  MICHAEL GAMST, CHRISTIE ACOSTA,        Case No.
12  KEVIN ADAMS, PAUL ARROYO,
    FABIAN BARRAZA, RYAN BODILY,           **NOTICE OF REMOVAL**
13  YOLANDA CABADA, DARREN                 **OF CIVIL ACTION**
    COOPER, DANIEL CORTEZ, JR.,            **FROM STATE COURT**
14  RONALD CROMWELL, DAVID
    CUEVAS, ALLEN DAVIS, BASET             [28 U.S.C. §§ 1331, 1367,
15  FATAH, ROBERT GALLEGOS,                1441, and 1446]
    CHRISTOPHER GERAKIOS, MICHAEL
16  GREENE, JESUS GUERRERO, VICTOR
    GUTIERREZ, ANTHONY HERNANDEZ,
17  DAVID JUST, JOHN KLEEH II, JORGE
    LAZARO, JUAN LOZANO, LLOYD
18  NELSON, JR., BINH NGUYEN, ERIC
    PENA, STEVEN PRIETO, VICTOR
19  RAMIREZ, XAVIER RIVAS, DARREN
    ROBINSON, ROBERT ROMERO, JUSTIN
20  RUSSELL, JAE SEUNG, MANUAL
    SANDOVAL, WAI HENG SOOHOO,
21  EUGENIO STEWART, ARTURO
    VALENCIA, ROBERT VIEIRA, RYAN
22  WELLS, EMMETT WILKS, JR., ROGER
    YU, ANDREW ZAMORA, JOSE
23  ZAMORA,

24               Plaintiffs,

25        v.

26  COUNTY OF LOS ANGELES, a public
    entity, COUNTY OF LOS ANGELES
27  SHERIFF'S DEPARTMENT, a law
    enforcement agency in Los Angeles County,
28  LEE BACA, an individual, LARRY

1 | WALDIE, an individual, ED ROGNER, an
individual, KEVIN HEBERT, an individual,
2 | WILLIAM FUJIOKA, an individual,
PAMELA JOHNSON, an individual,
3 | GARY GREENWOOD, an individual,
ANDREW JACOB, an individual, KEVIN
4 | ZABORNIAK, an individual, CECILIA
RAMIREZ, an individual, JOE SALAS, an
5 | individual, JILL DESCHAMPS, an
individual, REGINALD MEREDITH, an
6 | individual, RICHARD CONLEY, JR., an
individual, WILLIAM KENNEDY, an
7 | individual, ROBERT ENGEL, an
individual, DEPUTY BASS, an individual,
8 | PROFESSIONAL PEACE
OFFICERS ASSOCIATION aka PPOA, a
9 | union entity, KEITH SMITH, an individual,
LISA GARRET, an individual, RALPH
10 | PLASENCIA, an individual, ANGELA
HUNT, an individual, and DOES 1 through
11 | 100, inclusive,

12 | Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

1  TO THE CLERK OF THE ABOVE ENTITLED COURT:

2        PLEASE TAKE NOTICE THAT COUNTY OF LOS ANGELES,

3  defendant in the action entitled *Gamst et al. v. County of Los Angeles et al.*, Case

4  No. 30-2011-00460752-CU-OE-CXC, filed in the Superior Court for the State of

5  California, County of Orange, removes that action to the United States District

6  Court for the Central District of California pursuant to 28 U.S.C. § 1331, § 1367, §

7  1441 and § 1446.  The grounds for removal are as follows:

8      1.    The Complaint in this state court action was filed on March 23, 2011

9  in the Superior Court of the State of California in and for the County of Orange,

10  Case No. 30-2011-00460752-CU-OE-CXC, captioned  *Gamst et al. v. County of*

11  *Los Angeles et al.*

12      2.    Defendant County of Los Angeles was served with a summons and

13  copy of the complaint on April 25, 2011.

14      3.    This Notice is being filed with this Court within thirty (30) days after

15  County of Los Angeles was served with a copy of Plaintiff's initial pleading setting

16  forth the claims for relief upon which Plaintiff's action is based, in accordance with

17  28 U.S.C. § 1446(b).

18      4.    This action is a civil action over which this Court has original

19  jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this

20  Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that it

21  arises under 42 U.S.C. § 1983.

22      5.    This Court has supplemental jurisdiction over the related state law

23  claims in this action under 28 U.S.C. § 1367, because those state law claims form

24  part of the same case or controversy as the federal claim over which this Court has

25  original jurisdiction.

26      6.    Plaintiff filed this case in the Superior Court of California, County of

27  Orange.  Therefore, the case may properly be removed to the Southern Division of

28  the Central District of California.  28 U.S.C. § 1441(a).  As discussed in the

1   contemporaneously filed Notice of Related Cases, this action is closely related to an
2   action in the Western Division of the Central District of California, *Esparza et al. v.*
3   *County of Los Angeles et al.*, Case No. CV11 02589 JFW (Ex), which was filed
4   March 28, 2011, and is currently pending before The Honorable John F. Walter.  As
5   such, Defendant believes this case should be related to *Esparza* and transferred to
6   the Western Division of the Central District of California.

7          7.     This case is also related to a simultaneously filed action in the Superior
8   Court of California, County of Orange, captioned *Coker et al. v. County of Los*
9   *Angeles et al.*, Case No. 30-2011-00460754-CU-OE-CXC.  The plaintiffs in *Gamst*
10  and *Coker* have both filed Notices of Related Case in their respective state cases.
11  Defendant Los Angeles County is also removing *Coker* to the Central District of
12  California, Southern Division, and requesting its transfer to Judge Walter, Western
13  Division, as *Coker* is also related to *Esparza*.

14         8.     In accordance with 28 U.S.C. § 1446(a), true and correct copies of all
15  process, pleadings, and orders served upon County of Los Angeles in the state court
16  action are attached hereto as Exhibit A.

17         9.     To the County's knowledge, no defendant other than County of Los
18  Angeles has been served in the state court action and thus joinder of the other
19  defendants in this Notice of Removal is not necessary.  *Salveson v. Western States*
20  *Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (*superceded by statute on*
21  *unrelated grounds*, as noted in *Ethridge v. Harbor House Rest.*, 861 F.2d 1389,
22  1392 n.3 (9th Cir. 1988).

1

2                                           Respectfully submitted,

3     Dated:  May 9, 2011                    JONES DAY

4

5                                           By:  *Elwood Lui /ssp cvr*

6                                                Elwood Lui

7                                           Attorneys for Defendants

8

9

10

       LAI-3130346v1
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 5 -

Exhibit A

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COUNTY OF LOS ANGELES, a public entity
***** See Additional Parties Attachment *****

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MICHAEL GAMST, CHRISTIE ACOSTA, KEVIN ADAMS,
***** See Additional Parties Attachment *****

FILED
FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

2011 APR 25 PM 4 00

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
03/23/2011 at 10:19:46 AM
Clerk of the Superior Court
By Maarit H Nordman, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Orange County Superior Court

CASE NUMBER:
*(Número):* 30-2011-00460752-CU-OE-CXC

Civil Complex Center
751 West Santa Ana Blvd., Santa Ana, California 92701

Judge David C. Velasquez

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joel W. Baruch, 2020 Main Street, Suite 900, Irvine, CA 92614   (949) 864-9662

DATE: 03/23/2011       ALAN CARLSON, Clerk of the Court       rio)       _____ , Deputy
*(Fecha)*                                                        Maarit H Nordman        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* COUNTY OF LOS ANGELES, a public entity

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* public entity
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

4-25-11

7

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Gamst, et al. v. County of Los Angeles, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

PAUL ARROYO, FABIAN BARRAZA, RYAN BODILY, YOLANDA CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL, DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS, CHRISTOPHER GERAKIOS, MICHAEL GREENE, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY HERNANDEZ, DAVID JUST, JOHN KLEEH II, JORGE LAZARO, JUAN LOZANO, LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA, STEVEN PRIETO, VICTOR RAMIREZ, XAVIER RIVAS, DARREN ROBINSON, ROBERT ROMERO, JUSTIN RUSSELL, JAE SEUNG, MANUAL SANDOVAL, WAI HENG SOOHOO, EUGENIO STEWART, ARTURO VALENCIA, ROBERT VIEIRA, RYAN WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW ZAMORA, JOSE ZAMORA,

Page  1  of  2

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]
**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc
www.FormsWorkflow.com

8

SUM-200(A)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Gamst, et al. v. County of Los Angeles, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, a law enforcement agency in Los Angeles County, LEE BACA, an individual, LARRY WALDIE, an individual, ED ROGNER, an individual, KEVIN HEBERT, an individual, WILLIAM FUJIOKA, an individual, PAMELA JOHNSON, an individual, GARY GREENWOOD, an individual, ANDREW JACOB, an individual, KEVIN ZABORNIAK, an individual, CECILIA RAMIREZ, an individual, JOE SALAS, an individual, JILL DESCHAMPS, an individual, REGINALD MEREDITH, an individual, RICHARD CONLEY, JR., an individual, WILLIAM KENNEDY, an individual, ROBERT ENGEL, an individual, DEPUTY BASS, an individual, PROFESSIONAL PEACE OFFICERS ASSOCIATION aka PPOA, a union entity, KEITH SMITH, an individual, LISA GARRETT, an individual, RALPH PLASENCIA, an individual, ANGELA HUNT, an individual, and DOES 1 through 100, inclusive.

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

9

1 | Joel W. Baruch SBN 85903
2 | Nikki Fermin SBN 271331
  | LAW OFFICES OF JOEL W. BARUCH, P.C.
3 | 2020 Main Street, Suite 900
  | Irvine, California 92614-8203
4 | Tel: (949) 864-9662
  | Fax: (949) 851-3185
5 | Thomas A. Pistone SBN 77774
6 | Eric Medel SBN 211808
  | Mitchell Reichmann SBN 238225
7 | Aaron Watts SBN 246095
  | PISTONE & WOLDER LLP
8 | 2020 Main Street, Suite 900
  | Irvine, California 92614-8203
9 | Tel: (949) 622-8980
  | Fax: (949) 622-8985

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

03/23/2011 at 10:15:48 AM
Clerk of the Superior Court
By Maarit H Nordman,Deputy Clerk

Attorneys for Plaintiffs MICHAEL GAMST, et al.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE, CIVIL COMPLEX CENTER

| | |
|---|---|
| MICHAEL GAMST, CHRISTIE ACOSTA, KEVIN ADAMS, PAUL ARROYO, FABIAN BARRAZA, RYAN BODILY, YOLANDA CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL, DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS, CHRISTOPHER GERAKIOS, MICHAEL GREENE, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY HERNANDEZ, DAVID JUST, JOHN KLEEH II, JORGE LAZARO, JUAN LOZANO, LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA, STEVEN PRIETO, VICTOR RAMIREZ, XAVIER RIVAS, DARREN ROBINSON, ROBERT ROMERO, JUSTIN RUSSELL, JAE SEUNG, MANUAL SANDOVAL, WAI HENG SOOHOO, EUGENIO STEWART, ARTURO VALENCIA, ROBERT VIEIRA, RYAN WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW ZAMORA, JOSE ZAMORA, Plaintiffs, | CASE NO: 30-2011-00460752-CU-OE-CXC **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** Judge David C. Velasquez |

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SC

-VS-

COUNTY OF LOS ANGELES, a public
entity, COUNTY OF LOS ANGELES
SHERIFF'S DEPARTMENT, a law
enforcement agency in Los Angeles
County, LEE BACA, an individual,
LARRY WALDIE, an individual, ED
ROGNER, an individual, KEVIN
HEBERT, an individual, WILLIAM
FUJIOKA, an individual, PAMELA
JOHNSON, an individual, GARY
GREENWOOD, an individual., ANDREW
JACOB, an individual, KEVIN
ZABORNIAK, an individual, CECILIA
RAMIREZ, an individual, JOE SALAS,
an individual, JILL DESCHAMPS, an
individual, REGINALD MEREDITH, an
individual, RICHARD CONLEY, JR.,
an individual, WILLIAM KENNEDY,
an individual, ROBERT ENGEL, an
individual, DEPUTY BASS, an individual,
PROFESSIONAL PEACE
OFFICERS ASSOCIATION aka PPOA,
a union entity, KEITH SMITH, an
individual, LISA GARRETT, an individual,
RALPH PLASENCIA, an individual,
ANGELA HUNT, an individual, and DOES
1 through 100, inclusive,

                    Defendants.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

2

## GENERAL ALLEGATIONS

1.     There are 43 named Plaintiffs in this action. All plaintiffs named in this Complaint are or were residents of the State of California.

2.     The two primary defendants in this action are Defendant COUNTY OF LOS ANGELES (hereafter LA COUNTY) and Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereafter LASD or LA COUNTY SHERIFF'S DEPARTMENT). It is understood that Defendant LA COUNTY may later take the position that Defendant LA COUNTY SHERIFF'S DEPARTMENT should be dismissed as a party defendant because that law enforcement agency is an entity within LA COUNTY. If such a request is made, the plaintiffs named herein will consider dismissing Defendant LA COUNTY SHERIFF'S DEPARTMENT with the understanding that the unlawful acts and omissions of this law enforcement agency and its employees, representatives, and agents will become the responsibility of Defendant LA COUNTY.

3.     There are individual defendants who will be named in this lawsuit where it is appropriate to do so. These individual defendants will be identified, where possible, in the separate causes of action which follow. On information and belief, it is alleged that all of these individual defendants are residents of the State of California. On information and belief, at least two of these individual defendants- Deputy GARY GREENWOOD and Deputy PAMELA JOHNSON- are residents of the County of Orange, State of California, which is the venue chosen for this lawsuit.

4.     Up until on or about September 30, 2010, all plaintiffs were sworn peace officers in the State of California pursuant to the provisions of Penal Code §830.31. Most of the plaintiffs herein were POST-Certified peace officers in the State of California. As will be noted more specifically herein, **34** of the named **43** plaintiffs in this Complaint are no longer sworn peace officers because of the unlawful actions of the Defendants; **9** of the named plaintiffs in this Complaint have become probationary deputy sheriffs with LASD, but and have sustained various damages because of the unlawful actions of the defendants.

5.     The named plaintiffs herein were at least satisfactorily-performing sworn

12

1   police officers, and, further, were medically qualified to perform the peace officer position at
2   the Office of Public Safety when the adverse employment actions occurred. Defendants LA
3   COUNTY and LASD, however, rated **about 79%** of these police officers as deficient for
4   one reason or another in 2010.

5       6.      There will be two lawsuits filed in connection with this action by counsel.
6   This is the smaller lawsuit in terms of number of plaintiffs (43) because it pertains to those
7   plaintiffs who are 39 years of age or younger as of September 30, 2010.  The other lawsuit
8   will be for those 125 plaintiffs who are under the age of 40 years as of September 30, 2010.

9       7.      Up until on or about September 30, 2010, most, if not all, of the 43 plaintiffs
10  named in this  Complaint were certified as competent and qualified peace officers by the
11  Commission on Peace Officer Standards and Training (POST), which was established by the
12  California legislature in 1959.  However, as a result of the unlawful actions of the
13  defendants, many of the plaintiffs in this action have lost their POST certifications.  Further,
14  many of the plaintiffs herein have lost their ability to wear badges and carry weapons, and
15  some have since experienced episodes that have threatened their safety and the safety of their
16  families because they are now "civilians" and have been recognized by thugs with whom
17  they formerly had dealings as peace officers with the OPS.

18      8.      Up until on or about September 30, 2010, the named plaintiffs were sworn
19  peace officer employees of the now-defunct Los Angeles County Office of Public Safety
20  (hereafter OPS).  After on or about September 30, 2010, the OPS ceased to exist and,
21  therefore, those former police officer employees of OPS who were not permitted to laterally
22  transfer into law enforcement positions with Defendant LA COUNTY SHERIFF'S
23  DEPARTMENT, have ceased to become peace officers in the State of California.  It is
24  further anticipated that some of the former OPS peace officer employees who were permitted
25  to laterally transfer into law enforcement positions with the LASO will lose their jobs due to
26  further unlawful actions of the defendants while this lawsuit is pending.

27      9.      The former OPS was formed in 1998 by consolidating three Los Angeles
28  County security and law enforcement agencies—the Department of Parks and Recreation

13

1 Police, the Department of Health Services, and the Internal Services Department's Safety
2 Police.
3      10.    At its apex, the OPS was the fourth largest law enforcement agency in Los
4 Angeles County—it employed about 580 sworn police officers and about 160 civilian
5 personnel. The OPS also utilized about 750 contract security guards.  The mission statement
6 of the OPS was as follows:

> "To provide protection for patrons, employees, and
> properties of county departments which contract for
> such services, and to provide a safe environment
> for those who use county parks and recreation areas.
> The Office of Public Safety is committed to maintaining
> a level of professional competence among its sworn
> personnel that will ensure the safety of those receiving
> services, as well as protecting the safety of our police
> officers."

16      11.    Prior to on or about September 30, 2010, the OPS maintained four bureaus—
17 the Administrative Services Bureau, the Facilities Bureau, the Parks Services Bureau, and the
18 Health Services Bureau.  The OPS had several specialized units, including Internal Affairs,
19 Background Investigations, Canine, Boat, Tactical Response Force, Weapons of Mass
20 destruction, and a reserve Mounted Unit.
21      12.    The OPS recruits had to be at least 20 years and six months old at the time of
22 hire, had to have a high school diploma or GED equivalent, had to have a California driver's
23 license, and had to pass all phases of the selection process, consisting of a written
24 examination, an oral interview, a background investigation with a polygraph examination,
25 and medical and psychological examinations.
26      13.    OPS sworn police personnel were killed and injured in the line of duty
27 protecting the residents of Los Angeles County.  OPS sworn personnel were proud of their
28 peace officer status and their role as public servants.  On a daily basis, they would put their

1   respective lives on the line for citizens, including, but not limited, those private citizens who
2   worked "civilian" jobs for Defendant LA COUNTY.  As the story unfolds, these same
3   private citizens who worked "civilian" jobs for Defendant LA COUNTY would demonstrate
4   an almost unprecedented zeal and delight in destroying the careers of these fine OPS officers.

5       14.     The OPS strictly adhered to the Public Safety Officer Procedural Bill of Rights
6   (hereafter POBRA), which is codified at Government Code §§ 3300-3313 when one of its
7   officers was involved in an allegation of misconduct or when a punitive action was about to
8   or had been taken by the OPS.

9       15.     Plaintiffs are informed and believe, and thereon allege, that the OPS officers
10  involved in this action were in fact more qualified to serve than new hires for Defendant LA
11  COUNTY SHERIFF'S DEPARTMENT, since OPS required its officers to have either a
12  POST certification and/or prior law enforcement experience whereas said Defendant LA
13  COUNTY SHERIFF'S DEPARTMENT did not have those requirements for its new hires.

14      16.     In October, 1998, class members who were OPS police officers filed a
15  protected action, alleging causes of action for violations of the California Fair Employment
16  and Housing Act (FEHA, Government Code §12940 et seq.) and federal law, including Title
17  VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.).  The essence of the lawsuit
18  alleged racial and/or national origin discrimination against the Defendants LA COUNTY and
19  LA COUNTY SHERIFF'S DEPARTMENT.  The class action was entitled <u>George Frank, et
20  al. v. County of Los Angeles, et. al.</u>, and the venue was in the Los Angeles County Superior
21  Court. Ultimately, the case was tried by a jury and the aggrieved plaintiffs were awarded
22  millions of dollars.

23      17.     On appeal, the decision in the <u>Frank</u> case was reversed by the Second District
24  Court of Appeal in a decision on or about April 12, 2007.  The California Supreme Court
25  denied review on or about August 8, 2007.

26      18.     Following the verdict in the trial court in the <u>Frank</u> lawsuit, members of
27  Defendant LA COUNTY's Board of Supervisors Angeles County Board of Supervisors
28  publically declared their intention to "disband" the OPS after the legal proceedings were

1   culminated.  In particular, current Supervisor Don Knabe, on or about June 20, 2002, stated

2   words to the effect of "In the face of $100 million, disbanding (the OPS) is an option we

3   have to look at...It has to be something that would be under consideration, to eliminate

4   them...I just consider this award outrageous...It's unbelievable that someone can rule against

5   us like this."  Current Supervisor Michael Antonovich echoed the sentiments of Supervisor

6   Knabe, stating words to the effect of "the sad part is that many people in the OPS could end

7   up losing their position because of the action of their union."  It has taken awhile, but the

8   Board of Supervisors has made good on their "threat".  The OPS has now been disbanded,

9   and hundreds of lives and careers have been decimated or diminished.

10          19.     Almost immediately following the Supreme's Court denial of review of the

11  appellate court decision in August, 2007, Defendant LA COUNTY and its CEO initiated a

12  feasibility study on September 20, 2007 to be conducted of the OPS law enforcement

13  organization.  This action was not a coincidence.  Reportedly, at issue in the feasibility study

14  was to determine which option, either consolidation or an independent department, would be

15  the most viable for the County of Los Angeles.  In fact, it later became apparent that the

16  initiation of a feasibility study was a ruse and was an effort to disband the OPS at the behest

17  of LA COUNTY's Board of Supervisors who were still smarting over the jury verdict

18  received by the OPS in the Frank lawsuit.  Plaintiffs are informed and believe, and thereon

19  allege, that Defendant LA COUNTY immediately started "take over" studies of the OPS by

20  Co-Defendant LA COUNTY SHERIFF'S DEPARTMENT for the purpose of disbanding the

21  OPS because of the angst created by the filing and prosecution of the Frank lawsuit by OPS

22  sworn police officer personnel.

23          20.     After the "take over" studies were completed, the Board of Supervisors of

24  Defendant LA COUNTY set aside sufficient funding on or about September 22, 2009 to

25  complete what it called the "merger" between the OPS and Co-Defendant LA COUNTY

26  SHERIFF'S DEPARTMENT.  It also became apparent that, in 2009, it would not save, and

27  would cost, the County money to "merge" the functions and personnel of the OPS and

28  Defendant LA COUNTY SHERIFF'S DEPARTMENT.  In these strained economic times,

1  any employment action in Defendant LA COUNTY which costs, rather than saves, the

2  citizens money has to be viewed as unlawfully motivated.

3       21.    On or about December 15, 2009, the Board of Supervisors of Defendant LA

4  COUNTY voted 4 to 1 to "merge" the OPS into Defendant LA COUNTY SHERIFF'S

5  DEPARTMENT.  At the public forum portion of the meeting, the following occurred:

6            A)    Defendant LASD CAPTAIN ED ROGNER told the Board of

7  Supervisors that "I will be commanding the transition and answering directly to the

8  Undersheriff (i.e. Defendant LASD UNDERSHERIFF LARRY WALDIE)."

9            B)    Defendant LA COUNTY CEO WILLIAM FUJIOKA admitted to the

10 Board of Supervisors that "...essentially the OPS would no longer exist...those individuals

11 who are qualified will become deputy sheriffs....the Sheriff will, in turn, be responsible for

12 managing or providing the overall management of the current functions that are provided by

13 the OPS, including park patrol and also the security of our various County facilities, from

14 D.P.S.S., Health Services, and even this particular facility.  And so we'll have a single law

15 enforcement agency within the County of Los Angeles that I believe we should have.  And

16 we'll have our law enforcement, our Sheriff, the person responsible for law enforcement

17 activities herein the County, responsible for what OPS currently handles."

18            C)    Defendant LA COUNTY CEO WILLIAM FUJIOKA also admitted to

19 Board of Supervisors that Defendant LA COUNTY SHERIFF LEE BACA made a personal

20 commitment not to cut the budget for the service of the OPS functions that would soon be

21 assumed by Defendant LASD.

22            D)    Defendant LASD CAPTAIN ED ROGNER, despite his stated position

23 to others in the management of the OPS that the planned action would violate pertinent

24 provisions of the Public Safety Officers Procedural Bill of Rights (hereafter "POBRA" or

25 "the POBRA"), represented to the Board of Supervisors that a polygraph examination, a

26 background examination, an *age-appropriate* medical examination and a psychological

27 examination, would "all be conducted".

28            E)    When asked the difference between a medical examination and an *"age-*

1 *appropriate*" medical examination by Supervisor Antonovich, Defendant LASD CAPTAIN ED

2 ROGNER stated as follows: "The height-weight standards for an entry level deputy sheriff at

3 age 21 are fairly strict, and probably nobody over the age of 40 would pass those requirements,

4 and so by doing age-appropriate, it allows the medical staff to look at the person's total health

5 situation, not just their height and weight, as to whether or not they feel they could still

6 perform the functions."

7         F)     Defendant LA COUNTY CEO WILLIAM FUJIOKA represented to the

8 Board of Supervisors as follows: "There's one important thing though, is the overreaching

9 point that I want to bring focus to.  We are not going to compromise the standards of the LA

10 County Sheriff's Department.  There will not be individuals who will be allowed to be part of

11 this department, regardless of the process or program, who do not meet the qualifications or

12 are not able to do the job.  The age-appropriate medical does not compromise.  The individuals,

13 in the assessment of our occupational health division, will still be fully capable of performing

14 this job."

15         G)    BRIAN MORIGUCHI, President of Co-Defendant

16 PROFESSIONAL PEACE OFFICERS IN LA COUNTY (hereafter "PPOA") and then a

17 lieutenant in Defendant LASD, informed the Board of Supervisors that PPOA represented

18 thousands of peace officers in Los Angeles County, including the 400 plus officers in the OPS.

19 He represented to the Board of Supervisors that all of the OPS employees had been notified

20 about what was to occur with respect to the so-called "merger- workforce reduction".  He also

21 represented that the OPS officers were "overwhelmingly in favor" of the proposal for

22 "consolidation".  He made a personal plea that the Board of Supervisors vote in favor of the

23 planned "merger" and in favor of Co-Defendants FUJIOKA's and BACA's support of the

24 "consolidation".

25         H)    Defendant LA COUNTY CEO FUJIOKA then indicated an attempt

26 would be made to find civilian jobs within LA COUNTY for those who did not "qualify" to

27 remain as police officers and who would suffer the action of losing their peace officer jobs.

28 He admitted, however, that the final outcome was impossible to estimate.  Even so, he

1 promised the Board of Supervisors that "we have a strong commitment to make every
2 appropriate and every reasonable effort to address the needs" for each OPS officer.

3      22.     The two members of the Board of Supervisors who had made retaliatory
4 statements about disbanding the OPS following the trial of the aforementioned Frank case
5 were directly involved in initiating the voting process for what was to occur. Supervisor
6 Knabe made the motion and it was seconded by Supervisor Antonovich. The vote taken in
7 favor of the proposal was 4-1, with Supervisor Gloria Molina the sole vote against the
8 process.

9      23.     As noted, plaintiffs are informed and believe, and thereon allege, that the
10 "merger" of the OPS into Defendant LA COUNTY SHERIFF'S DEPARTMENT was in
11 direct retaliation for the participation of sworn police officer personnel in the OPS in the
12 aforesaid Frank lawsuit.

13      24.     As noted, plaintiffs are informed and believe, and thereon allege, that proof of
14 the unlawful motive of Defendant LA COUNTY in disbanding the OPS by "merging" it with
15 Co-Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT is that the process
16 did not save and in fact cost Los Angeles County money. Given the bleak economic forecast
17 which existed in December, 2009, personnel moves which cost rather than save a county
18 government money must, by definition, be prompted by an unlawful and/or retaliatory
19 motive.

20      25.     Defendant LA COUNTY is named as a defendant in this lawsuit based on the
21 allegations in this Complaint and based on the fact that it was a public entity employer of
22 all of the plaintiffs named in this Complaint and is still the public entity employer of many of
23 the plaintiffs. Many of the plaintiffs herein, after they were unlawfully "disqualified" from
24 their law enforcement positions and careers, became civilian employees of Defendant LA
25 COUNTY, although earning a lot less money and enjoying a lot less benefits than their peace
26 officer counterparts. Defendant LA COUNTY ignored, and continues to ignore, the fact that
27 the former OPS officers, although County employees, were different than their civilian
28 counterparts. Police officers in this state have rights that are not afforded to their civilian

1  counterparts in government employment. By engaging in the actions subsequently referred

2  to herein, Defendant LA COUNTY and Defendant LA COUNTY SHERIFF'S

3  DEPARTMENT committed wholesale violations of the POBRA and destroyed the careers

4  and the standard of living of families of many of the OPS employees.

5      26.   Defendant LA COUNTY, although claiming that the OPS was being "merged"

6  into Defendant LA COUNTY SHERIFF'S DEPARTMENT, did not treat the job action as a

7  true "merger". Customarily, in a true "merger", two or more entities combine to form a

8  single entity, and sound employment policies and practices dictate that employees of each of

9  the entities are subjected to the same scrutiny in performance and other factors where

10  consolidation of personnel or functions is required. In other words, if polygraph

11  examinations, background investigations, medical examinations, and psychological

12  examinations are the methods used to determine who will remain employed after the

13  "merger", then every person in each of the entities affected by the "merger" have to undergo

14  those examinations and investigations. In this "merger", however, only the OPS peace officer

15  personnel were subjected to examinations and investigations and not the deputy sheriffs from

16  Defendant LA COUNTY SHERIFF'S DEPARTMENT—why? Because the "merger" was a

17  ruse for disbanding the OPS in retaliation for the Frank lawsuit and because deputy sheriffs

18  were treated differently in terms of their POBRA rights in that they could not be subjected to

19  additional examinations and investigations because it would run afoul of their inalienable

20  rights under the POBRA.

21      27.   Defendant LA COUNTY SHERIFF'S DEPARTMENT is being named as a

22  defendant in this lawsuit in an abundance of caution. Plaintiffs recognize that Defendant LA

23  COUNTY SHERIFF'S DEPARTMENT is a law enforcement agency within Defendant LA

24  COUNTY and, as with other litigation of this type, Defendant LA COUNTY will agree to

25  assume any responsibility for damages on behalf of Defendant LA COUNTY SHERIFF'S

26  DEPARTMENT.

27      28.   There are individual defendants being named in this lawsuit as to specific

28  causes of action.  Where necessary, these individual defendants will be specifically

1   identified with the particular cause of action.  Venue in Orange County, California is

2   appropriate because one or more of these individual defendants is a resident of Orange

3   County and has been a resident of this County at all times herein mentioned.

4       29.    Each plaintiff herein has appropriately and timely filed government claims

5   against Defendant LA COUNTY, LA COUNTY SHERIFF'S DEPARTMENT, and

6   individual defendant to be identified later. These government claims were filed at different

7   time.  The initial government claims were filed on August 10, 2010 and were rejected on

8   September 27, 2010.  All other subsequently-filed government claims were rejected after

9   September 27, 2010.  All of the government claims filed on behalf of all 125 plaintiffs have

10   been rejected, either by affirmative conduct or by operation of law.  A copy of the

11   government claims and the rejections for each of the 125 plaintiffs named herein will be

12   provided upon request.

13       30.    Each of the 43 plaintiffs herein has appropriately and timely filed an

14   administrative complaint with the California Department of Fair Employment and Housing,

15   asking for "right to sue" letters for claims regarding age discrimination, disability

16   discrimination, and retaliation.  The DFEH has recently closed its Orange County office and

17   has now referred all administrative complaints to be filed to its office in Los Angeles County.

18   Some of the required "right to sue" letters have been obtained and others are stuck in the

19   backlog.  The director for the DFEH's office in Los Angeles County has promised that "right

20   to sue" letters will be provided for each plaintiff herein a timely manner.  If these "right to

21   sue" letters are not all provided by the time of the filing of this Complaint, the affected

22   plaintiffs reserve the right to amend this Complaint to allow for those "right to sue" letters.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

### FIRST CAUSE OF ACTION

**(RETALIATION- ARISING UNDER THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)**

31.     Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 30 as though fully set forth.

32.     In October, 1998, class members who were OPS police officers filed a protected action, alleging causes of action for violations of the California Fair Employment and Housing Act (FEHA, Government Code §12940 et seq.) and federal law, including Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.).  The essence of the lawsuit alleged racial and/or national origin discrimination against the Defendants LA COUNTY and LA COUNTY SHERIFF'S DEPARTMENT.  The class action was entitled <u>George Frank, et al. v. County of Los Angeles, et. al.</u>, and the venue was in the Los Angeles County Superior Court. Ultimately, the case was tried by a jury and the aggrieved plaintiffs were awarded millions of dollars.

33.     Following the verdict in the trial court in the <u>Frank</u> lawsuit, members of Defendant LA COUNTY's Board of Supervisors Angeles County Board of Supervisors publically declared their intention to "disband" the OPS after the legal proceedings were culminated

34.     Defendant LA COUNTY, et al, appealed from the trial court verdict in which millions of dollars were awarded in the case based on a finding that the OPS class members were discriminated against on the basis of the protected class of race and/or national origin. On appeal, the decision in the <u>Frank</u> case was reversed by the Second District Court of Appeal in a decision on or about April 12, 2007.  The California Supreme Court denied review on or about August 8, 2007.

35.     Following the verdict in the trial court in the <u>Frank</u> lawsuit, members of Defendant LA COUNTY's Board of Supervisors Angeles County Board of Supervisors

1   publically declared their intention to "disband" the OPS after the legal proceedings were

2   culminated.  It has taken awhile, but the Board of Supervisors has made good on their

3   "threat".  The OPS has now been disbanded, and hundreds of lives and careers have been

4   decimated.

5           36.    Almost immediately following the Supreme's Court denial of review of the

6   appellate court decision in August, 2007, Defendant LA COUNTY and its CEO initiated a

7   feasibility study on September 20, 2007 to be conducted of the OPS law enforcement

8   organization.  This action was not a coincidence.  Reportedly, at issue in the feasibility study

9   was to determine which option, either consolidation or an independent department, would be

10  the most viable for the County of Los Angeles.  In fact, it later became apparent that the

11  initiation of a feasibility study was a ruse and was an effort to disband the OPS at the behest

12  of LA COUNTY's Board of Supervisors who were still smarting over the jury verdict

13  received by the OPS in the Frank lawsuit.  Plaintiffs are informed and believe, and thereon

14  allege, that Defendant LA COUNTY immediately started "take over" studies of the OPS by

15  Co-Defendant LA COUNTY SHERIFF'S DEPARTMENT for the purpose of disbanding the

16  OPS because of the angst created by the filing and prosecution of the Frank lawsuit by OPS

17  sworn police officer personnel.

18          37.    After the "take over" studies were completed, the Board of Supervisors of

19  Defendant LA COUNTY set aside sufficient funding on or about September 22, 2009 to

20  complete what it called the "merger" between the OPS and Co-Defendant LA COUNTY

21  SHERIFF'S DEPARTMENT.  It also became apparent that, in 2009, it would not save, and

22  would cost, the County money to "merge" the functions and personnel of the OPS and

23  Defendant LA COUNTY SHERIFF'S DEPARTMENT.  In these strained economic times,

24  any economic program in Defendant LA COUNTY which costs, rather than saves, money

25  has to be viewed as unlawfully motivated.

26          38.    On or about December 15, 2009, the Board of Supervisors of Defendant LA

27  COUNTY voted 4 to 1 to "merge" the OPS into Defendant LA COUNTY SHERIFF'S

28  DEPARTMENT.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
14

39.  As noted, plaintiffs are informed and believe, and thereon allege, that the "merger" of the OPS into Defendant LA COUNTY SHERIFF'S DEPARTMENT was in direct retaliation for the participation of sworn police officer personnel in the OPS in the aforesaid Frank lawsuit.

40.  As noted, plaintiffs are informed and believe, and thereon allege, that proof of the unlawful motive of Defendant LA COUNTY in disbanding the OPS by "merging" it with Co-Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT is that the process did not save and in fact cost Los Angeles County money.  Given the bleak economic forecast which existed in December, 2009, personnel moves which cost rather than save a county government money must, by definition, be prompted by an unlawful and/or retaliatory motive.

41.  Defendant LA COUNTY is named as a defendant in this lawsuit based on the allegations in this Complaint and based on the fact that it was a public entity employer of all of the plaintiffs named in this Complaint and is still the public entity employer of many of the plaintiffs.  Many of the plaintiffs herein, after they were unlawfully "disqualified" from their law enforcement positions and careers, became civilian employees of Defendant LA COUNTY, although earning a lot less money and enjoying a lot less benefits than their peace officer counterparts.  Defendant LA COUNTY ignored, and continues to ignore, the fact that the former OPS officers, although County employees, were different than their civilian counterparts.  Police officers in this state have rights that are not afforded to their civilian counterparts in government employment.  By engaging in the actions subsequently referred to herein, Defendant LA COUNTY and Defendant LA COUNTY SHERIFF'S DEPARTMENT committed wholesale violations of the POBRA and destroyed the careers and families of the OPS employees.

42.  Defendant LA COUNTY, although claiming that the OPS was being "merged" into Defendant LA COUNTY SHERIFF'S DEPARTMENT, did not treat the job action as a true "merger".  Customarily, in a true "merger", two or more entities combine to form a single entity, and sound employment policies and practices dictate that employees of each of

24

1    the entities are subjected to the same scrutiny in performance and other factors where

2    consolidation of personnel or functions is required.  In other words, if polygraph

3    examinations, background investigations, medical examinations, and psychological

4    examinations are the methods used to determine who will remain employed after the

5    "merger", then every person in each of the entities affected by the "merger" have to undergo

6    those examinations and investigations. In this "merger", however, only the OPS peace officer

7    personnel were subjected to examinations and investigations and not the deputy sheriffs from

8    Defendant LA COUNTY SHERIFF'S DEPARTMENT—why?  Because the "merger" was a

9    ruse for disbanding the OPS in retaliation for the <u>Frank</u> lawsuit and because deputy sheriffs

10   were treated differently in terms of their POBRA rights in that they could not be subjected to

11   additional examinations and investigations because it would run afoul of their inalienable

12   rights under the POBRA.

13       43.    At all times herein mentioned, Government Code §12940(h) made it an

14   unlawful employment practice for an employer covered under the FEHA to retaliate against

15   an employee or employees who opposed discrimination, harassment, and/or retaliation in the

16   workplace.  Plaintiffs contend that this provision against retaliation applied to Defendant LA

17   COUNTY's dismantling of the OPS in retaliation for some of their colleagues filing and

18   participating in the aforesaid <u>Frank</u> lawsuit, in that filing and participating in that lawsuit

19   alleging race and/or national origin discrimination was an activity protected under the FEHA.

20   Even though all plaintiffs named herein may not have been parties in the <u>Frank</u> lawsuit,

21   nevertheless they were victimized by losing their peace officer jobs because of their

22   association with those plaintiffs who were parties and with the law enforcement organization

23   in which those parties were employed.

24       44.    As a direct result of the aforesaid retaliation in violation of the FEHA, each

25   plaintiff named herein has sustained, and will continue to sustain for a period of time in the

26   future, compensatory damages, including, but not limited to, lost income and lost future

27   earning capacity, in an amount according to proof at the trial of this action.

28       45.    As a further direct result of the aforesaid retaliation in violation of the FEHA,

1    each plaintiff named herein has sustained, and will continue to sustain for a period of time in

2    the future, general (non-economic) damages, all in an amount according to proof at the trial

3    of this action.

4         46.     Each plaintiff herein, and his or her counsel of record, are entitled to their

5    reasonable attorney's fees and costs in an amount according to proof after trial pursuant to

6    Government Code §12965(b).

7

8                     **SECOND CAUSE OF ACTION**

9       **(FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND**

10     **RETALIATION- ARISING UNDER THE CALIFORNIA FAIR**

11     **EMPLOYMENT AND HOUSING ACT- BY ALL PLAINTIFFS AGAINST**

12     **DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS**

13     **ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)**

14        47.     Plaintiffs reallege and incorporate herein those matters contained in paragraphs

15    1 through 46 as though fully set forth.

16        48.     At all times herein mentioned, and as more particularly appears in the General

17    Allegations and the First Cause of Action of this Complaint, all plaintiffs named herein were

18    subjected to harassment, discrimination, retaliation because of their participation in the

19    aforesaid <u>Frank</u> lawsuit, or because of their association with their police officer colleagues

20    who were employed by the former Office of Public Safety.

21        49.     Further, at all times herein mentioned, some, but not all, of the plaintiffs named

22    herein were subjected to discrimination on account of their respective actual or perceived

23    physical or mental disabilities.

24        50.     At all times herein mentioned, Government Code §12940(i) was in full force

25    and effect. This statute made it an unlawful employment practice for an employer in this

26    state to fail to take all reasonable and necessary steps to prevent harassment and

27    discrimination from occurring.

28        51.     Defendants LA COUNTY and LA COUNTY SHERIFF'S DEPARTMENT

26

1    were aware that members of the Board of Supervisors wanted to "disband" the Office of

2    Public Safety in retaliation for the filing and maintenance of the aforesaid <u>Frank</u> lawsuit.

3        52.    On or about December 15, 2009, after feasibility and other studies were

4    conducted, Defendant LA COUNTY decided to implement the so-called "merger/ work force

5    reduction" for the Office of Public Safety. Because the jobs of police officers were affected

6    by the decision to dismantle the Officer of Public Safety, Defendant LA COUNTY assigned

7    the task of performing polygraphs and background investigations to Co-Defendant LA

8    COUNTY SHERIFF'S DEPARTMENT. Initially, Defendant LA COUNTY required the

9    dismantling of the Office of Public Safety and the so-called lateral transfer of former OPS

10   police officers into deputy sheriff positions by June 30, 2010. However, because of

11   numerous problems with completing the process, the time period was extended to September

12   30, 2010. By September 30, 2010, almost all of the affected former OPS police officers were

13   either working as deputy sheriffs on probation, or were working in some civilian job within

14   Los Angeles County, or were no longer working in any capacity for Los Angeles County

15   either because they were terminated outright or for some other reason such as having retired

16   from the employment to avoid losing all compensation and/or privileges of having been a

17   sworn police officer.

18       53.    More specifically, following the completion of the initial process of requiring

19   each OPS officer to undergo polygraph and background investigations administered by or

20   under the auspices of Defendant LA COUNTY SHERIFF'S DEPARTMENT, the former

21   OPS officers were required to undergo pre-employment medical and psychological

22   examinations if they had "passed" the polygraph and background investigation. It is believed

23   that these medical and psychological examinations were administered under the auspices and

24   supervision by both Defendants LA COUNTY and LA COUNTY SHERIFF'S

25   DEPARTMENT. As noted elsewhere herein, some of the affected plaintiffs named herein

26   contend that the medical examinations were not "age appropriate" and the psychological

27   examinations were utilized as a second background investigation in violation of the POBRA.

28   Further, some of the plaintiffs named herein contend that the medical and psychological

1   examinations violated the applicable law against requiring pre-employment physical and/or
2   psychological examinations.

3       54.   Some of the plaintiffs named herein who had "passed" the polygraph and
4   background investigations were disqualified from being "laterally transferred" into deputy
5   sheriff positions for reasons allegedly related to their medical and/or psychological condition.
6   Still others plaintiffs were disqualified because they allegedly "lied" in providing information
7   about their medical or psychological condition.  Some of those disqualified plaintiffs lost
8   their police officer status and were involuntarily demoted to civilian positions with
9   Defendant LA COUNTY.  Some of these disqualified plaintiffs lost their police officer status
10  and were terminated as opposed to demoted into a civilian position with Defendant LA
11  COUNTY.

12      55.   From and after December 15, 2009, once it became apparent that the OPS
13  would be dismantled and subjected to the "workforce reduction/ merger", Defendant LA
14  COUNTY had the opportunity to ensure that the process of dismantling the Office of Public
15  Safety was performed in compliance with the anti-discrimination laws of the State of
16  California as codified in the FEHA.  In particular, Defendant LA COUNTY could have
17  determined how many OPS police officers would be affected by the job actions to be taken
18  and, also, the protected class status of each of those officers.

19      56.   Defendant LA COUNTY, however, miserably failed and/or refused to take into
20  account the protected status of each officer that was affected by the job action, including, but
21  not limited to, his or her age and disability and/or participation in the aforesaid Frank lawsuit.
22  Plaintiff are informed and believe, and thereon allege, that Defendant LA COUNTY was in
23  such a hurry to implement the wishes of its Board of Supervisors to retaliate against the OPS
24  by dismantling it that the protected class status of each of the officers affected by the job
25  action was not taken into consideration.  The result was that Defendant LA COUNTY
26  violated pertinent provisions of the FEHA which were designed to prevent harassment,
27  discrimination, and/or retaliation, and caused the hereinafter described damages to the named
28  plaintiffs herein.

57.     As a direct result of the aforesaid failure to prevent harassment, discrimination, and/or retaliation in violation of the FEHA, each plaintiff named herein has sustained, and will continue to sustain for a period of time in the future, compensatory damages, including, but not limited to, lost income and lost future earning capacity, in an amount according to proof at the trial of this action.

58.     As a further direct result of the aforesaid failure to prevent harassment, discrimination, and/or retaliation in violation of the FEHA, each plaintiff named herein has sustained, and will continue to sustain for a period of time in the future, general (non-economic) damages, all in an amount according to proof at the trial of this action.

59.     Each plaintiff herein, and his or her counsel of record, are entitled to their reasonable attorney's fees and costs in an amount according to proof after trial pursuant to Government Code §12965(b).

### THIRD CAUSE OF ACTION

**(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3307- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100 FOR ADMINISTRATION OF POLYGRAPH EXAMINATIONS)**

60.     Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 59 as though fully set forth.

61.     The named plaintiffs herein were not new hires. In fact, they were still working as sworn police officers employed by Defendant LA COUNTY at the time of the job action and continued to be employed by Defendant LA COUNTY until on or about September 30, 2010. Consequently, they could not be required to take polygraph examinations as a condition for retaining their employment as sworn law enforcement officers with Defendant LA COUNTY. Moreover, each plaintiff named herein, had already

29

1  taken a polygraph examination and had been subjected to a background investigation before

2  becoming sworn police officers employed by the OPS and before obtaining their POST

3  certification. And, in fact, Defendant Captain ED ROGNER admitted to at least one the

4  plaintiffs herein that it would be unlawful under the POBRA for the OPS officers to have to

5  take a polygraph examination.

6      62.    The intent of Defendant LA COUNTY and Defendant LA COUNTY

7  SHERIFF'S DEPARTMENT was to eliminate the functions of the OPS as a law

8  enforcement organization and replace those OPS personnel performing those functions with

9  deputy sheriffs. For example, if before the "workforce reduction/ merger", a particular OPS

10  officer performed in the law enforcement function of guarding a county medical center

11  facility, it was intended by defendants that the function of guarding that same county medical

12  center facility would continue after the "workforce reduction/ merger" with the only

13  difference being that a deputy sheriff instead of an OPS officer would be performing those

14  guard duties. In other words, the OPS sworn peace officer personnel were not losing their

15  jobs because their respective positions were being eliminated.

16      63.    At all times herein mentioned, Government Code §3307(a) was in full force

17  and effect, and read as follows:

18          "No public safety officer shall be compelled to submit

19          to a lie detector test against his or her will. No disciplinary

20          action or other recrimination shall be taken against a public

21          safety officer refusing to submit to a lie detector test, nor

22          shall any comment be entered anywhere in the investigator's

23          notes or anywhere else that the public safety officer refused

24          to take, or did not take, a lie detector test, nor shall any

25          testimony or evidence be admissible at a subsequent

26          hearing, trial, or proceeding, judicial or administrative

27          to the effect that the public safety officer refused to take,

28          or was subjected to a lie detector test."

64.   At all times herein mentioned, Government Code §3307(b) was in full force
and effect, and read as follows:

>   "For the purpose of this section, 'lie detector' means a
>   polygraph, deceptograph, voice stress analyzer, psychological
>   stress evaluator, or any other similar device, whether
>   mechanical or electrical, that is used, or the results of which
>   are used, for the purpose of rendering a diagnostic opinion
>   regarding the honesty or dishonesty of an individual."

65.   At all times herein mentioned, the law of the State of California provided that
the prohibitions of Government Code §3307(a) and §3307(b), protected existing police
officers, such as plaintiffs herein, and the applicable law did not prevent polygraph
examinations to be administered to new hires.  Under these POBRA protections, existing
police officers could only be given a polygraph if they were applying for a specialized
position within their own agency, such as the narcotics division.  Under such circumstances,
the questions asked on the polygraph would be limited to questions designed to ferret out the
applicant's qualifications for the particular assignment in the narcotics division and, if the
existing police officer applicant failed the polygraph, the results would not be placed in his or
her police personnel file and, further, the particular agency could not take any "punitive
action" against that applicant for failing the polygraph examination.

66.   On or about December 15, 2009, when the so-called "workforce reduction/
merger" was announced and the process of dismantling the OPS was initiated by defendants,
Co-Defendant ED ROGNER of Defendant LA COUNTY SHERIFF'S DEPARTMENT was
placed in charge of the OPS law enforcement unit.  In other words, a highly-placed official of
the LA COUNTY SHERIFF'S DEPARTMENT was then the primary supervisor of the
named plaintiffs herein, and he reported directly to Co-Defendant UNDERSHERIFF LEE
WALDIE who, in turn, reported directly to SHERIFF LEE BACA.  Defendant LA COUNTY
SHERIFF'S DEPARTMENT remained the primary supervisor of the named plaintiffs herein
until September 30, 2010.  Therefore, during this transitionary period, the named plaintiffs

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
22

1   herein were reporting to a high level management official of Defendant LA COUNTY

2   SHERIFF'S DEPARTMENT who was responsible to them to ensure that their various rights

3   and protections under the POBRA were being safeguarded. Nevertheless, all of the

4   challenged and unlawful polygraph examinations of the named plaintiffs herein were

5   conducted during the inclusive period of time when Defendant ED ROGNER, a Captain of

6   the LA COUNTY SHERIFF'S DEPARTMENT was in charge of the OPS law enforcement

7   agency and when the named plaintiffs herein were still employed as sworn police officers

8   with the OPS law enforcement organization of Defendant LA COUNTY.

9       67.    Existing deputy sheriffs and management law enforcement personnel employed

10  with Defendant LA COUNTY SHERIFF'S DEPARTMENT were not required to take

11  polygraph examinations between December 15, 2009 and September 30, 2010 as a condition

12  of keeping their sworn police officer positions; instead, only the sworn police officers with

13  the OPS, like the named plaintiffs herein, were required to take the polygraph examinations

14  in order to retain their law enforcement jobs with Defendant LA COUNTY.  Indeed, if

15  Defendant LA COUNTY had required existing deputy sheriffs and/or management personnel

16  of Defendant LA COUNTY SHERIFF'S DEPARTMENT to take polygraph examinations in

17  order to retain their sworn peace officer positions, Defendant LA COUNTY would have

18  violated the POBRA as to each such polygraph examination required of the law enforcement

19  counterparts of the named plaintiffs herein.  If this were a true "workforce reduction/

20  merger" between the sworn peace officers of both the OPS and the LA COUNTY DEPUTY

21  SHERIFF'S DEPARTMENT, and if Defendant LA COUNTY did not have an unlawful

22  motivation in undertaking the subject adverse actions, one would expect either that unlawful

23  polygraph examinations would not have been required of any LA COUNTY peace officer or,

24  if these examinations were required, peace officers from both the OPS and the Sheriff's

25  Department would equally be at risk in taking the examinations.

26      68.    Based on the foregoing paragraphs in this cause of action, Defendants LA

27  COUNTY and LA COUNTY SHERIFF'S DEPARTMENT violated the rights and

28  protections of the POBRA as to each named plaintiff herein (i.e. as set forth in Government

32

1 | Code §§3307(a) and 3307(b).

2 |      69.    Many of the named plaintiffs herein were required to take more than one

3 | polygraph examination between December 15, 2009 and September 30, 2010.  The named

4 | plaintiffs herein contend that each taking of the polygraph examination was a separate and

5 | distinct violation of their respective POBRA rights and entitles them to the damages and

6 | remedies provided under the POBRA for each taking of the polygraph examination.

7 |      70.    Each plaintiff herein was required to take at least one polygraph examination in

8 | order to retain his or her position as a sworn POST-certified police officer.

9 |      71.    At all times herein mentioned, Government Code §3309.5(e) was in full force

10 | and effect.  This statute provided, in pertinent part, as follows:

11 |               "In addition to the extraordinary relief afforded by

12 |               this chapter, upon a finding by a superior court that

13 |               a public safety officer department, its employees,

14 |               agents, or assigns, with respect to acts taken within

15 |               the scope of employment, maliciously violated any

16 |               provision of this chapter with the intent to injure the

17 |               public safety officer, the public safety department

18 |               shall, for each and every violation, be liable for a civil

19 |               penalty not to exceed $25,000 to be awarded to the

20 |               public safety officer whose right or protection was

21 |               denied and for reasonable attorney's fees as may be

22 |               determined by the court.  If the court so finds, and

23 |               there is sufficient evidence to establish actual damages

24 |               by the officer whose right or protection was denied,

25 |               the public safety department shall also be liable for

26 |               the amount of actual damages...."

27 |      72.    At all times herein mentioned, Government Code §3309.5(d)(1) was in full

28 | force and effect.  This statute provided, in pertinent part, as follows:

"In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction from taking any punitive action against the public safety officer."

73.   Most of the named plaintiffs in this particular Complaint "failed" the polygraph examination(s) and/or background investigations; consequently, they were either placed in civilian jobs with Defendant LA COUNTY or they were terminated from the employment of Defendant LA COUNTY or they were forced to retire if they were eligible to do so.

74.   Most of the named plaintiffs in this particular Complaint were verbally, mentally, and emotionally abused by either their polygraphers or their background investigator (deputy sheriff from the Sheriff's Department), or by both. Thus, for example, one of the named plaintiffs in the age-protected lawsuit, who had been a police officer for about 30 years, was instructed by her particular background investigator to report to a particular room for an interview; and, when she reported to that particular room as instructed, it was a broom closet. Several background investigators witnessed this plaintiff opening the door to the broom closet and had a hearty laugh at her expense.

75.   Each plaintiff named herein contends that the conduct of the named defendants in this cause of action, in subjecting them to polygraph examinations under the circumstances as stated in this Complaint, was a malicious action designed to injure them specifically.

76.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a civil penalty of up to $25,000 for each time they were required to take a polygraph examination.

77.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his or her actual damages, including, but not limited to, compensatory (economic) damages

34

such as loss of income and lost future earning capacity, and general (non-economic) damages such as monetary recovery for physical, mental, and emotional damages. These damages are in an amount according to proof at the trial of this action.

78. Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to proof at the trial of this action.

79. On information and belief, each plaintiff named herein alleges information pertaining to the polygraph examinations have been included into his or her police personnel file or other file kept for personnel purposes. The information obtained about each plaintiff named herein as a result of the polygraph examination(s) to which he or she was unlawfully subjected should be purged from his or her police personnel file or other file kept for personnel purposes. Each plaintiff named herein therefore prays for extraordinary relief directed to the custodian of the file(s) to purge the file of all information and data, positive or negative, that was derived from the unlawful polygraph examination(s). This relief is requested pursuant to the provisions of Government Code §3309.5(d)(1) as set forth above.

80. The provisions of the POBRA are, pursuant to Government Code §3300 and §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore request an award of attorney fees and costs pursuant to the private attorney general doctrine provisions of Code of Civil Procedure §1021.5.

**FOURTH CAUSE OF ACTION**

**(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL
BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3305- BY
THE PLAINTIFFS NAMED BELOW AGAINST DEFENDANTS COUNTY OF
LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT,
AND DOES 1 THROUGH 100)**

81. Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 80 as though fully set forth.

82.  At all times herein mentioned, Government Code §3305 was in full force and effect.  This statute was part of the POBRA and provided as follows:

> "No public safety officer shall have any comment adverse
> to his interest entered into his personnel file, or any other
> file used for any personnel purposes by his employer.
> without the public safety officer having first read and
> signed the instrument containing the adverse comment
> indicating he is aware of such comment, except that such
> entry may be made if after reading such instrument the
> public safety officer refuses to sign it.  Should a public
> safety officer refuse to sign, that fact shall be noted on that
> document, and signed or initialed by such officer."

83.  Not all of the plaintiffs named in this Complaint contend they "failed" the polygraph examination(s) and/or background investigations, or that they were disqualified for a medical and/or psychological reason.  Indeed, some of the plaintiffs named in this Complaint were allowed to "laterally transfer" into deputy sheriff positions in Defendant LASD, but were placed on a probationary status as deputy sheriffs.  On information and belief, those plaintiffs who were not permitted to "laterally transfer" into deputy sheriff positions with Defendant LASD, all had adverse comments placed into their personnel file without the particular named plaintiff be able first read and sign the documents containing the adverse comments.

84.  The named plaintiffs who have been "disqualified" for some reason are maintaining this cause of action, and are identified as follows: MICHAEL GAMST, CHRISTIE ACOSTA, PAUL ARROYO, FABIAN BARRAZA, YOLANDA CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL, DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS, CHRISTOPHER GERAKIOS, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY HERNANDEZ, DAVID JUST, LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA, STEVEN PRIETO, VICTOR

1  RAMIREZ, DARREN ROBINSON, JUSTIN RUSSELL, JAE SEUNG, WAI HENG

2  SOOHOO, EUGENIO STEWART, ARTURO VALENCIA, ROBERT VIEIRA, RYAN

3  WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW ZAMORA, JOSE ZAMORA.

4        85.    Also named as plaintiffs in this action is Plaintiff KEVIN ADAMS, who is

5  now a probationary deputy sheriff after his appeal from medical disqualification was granted.

6        86.    Each plaintiff named herein is informed and believes that he was initially or

7  forever disqualified from laterally transferring into a deputy sheriff position with Defendant

8  LA COUNTY SHERIFF'S DEPARTMENT because he or she either "failed" the polygraph

9  and/or background investigation, or because he or she "failed" the pre-employment physical

10  and/or psychological examination, or because he or she allegedly made an inaccurate

11  statement on his or her medical questionnaire.  In any of those cases, each plaintiff named

12  herein is informed and believe, and thereon alleges, that comments adverse to his or her

13  interest were entered into his or her police personnel file or other file kept for personnel

14  purposes, without each named plaintiff having first read and signed the instrument containing

15  the adverse comment or comments.

16        87.    Each plaintiff named herein further alleges that Defendants LA COUNTY and

17  LA COUNTY SHERIFF'S DEPARTMENT failed and/or refused to allow him or her to

18  review and then "sign off" on the adverse comments being entered into his or her police

19  personnel file or other file kept for personnel purposes.  This failure and/or refusal to allow

20  each plaintiff named herein to review and then "sign off" on the adverse comments before

21  these comments were placed in his or her police personnel file or other file kept for personnel

22  purposes was unlawful and in violation of Government Code §3305.

23        88.    At all times herein mentioned, Government Code §3309.5(e) was in full force

24  and effect.  This statute provided, in pertinent part, as follows:

25                "In addition to the extraordinary relief afforded by

26                this chapter, upon a finding by a superior court that

27                a public safety officer department, its employees,

28                agents, or assigns, with respect to acts taken within

the scope of employment, maliciously violated any

provision of this chapter with the intent to injure the

public safety officer, the public safety department

shall, for each and every violation, be liable for a civil

penalty not to exceed $25,000 to be awarded to the

public safety officer whose right or protection was

denied and for reasonable attorney's fees as may be

determined by the court. If the court so finds, and

there is sufficient evidence to establish actual damages

by the officer whose right or protection was denied,

the public safety department shall also be liable for

the amount of actual damages...."

89.     At all times herein mentioned, Government Code §3309.5(d)(1) was in full force and effect. This statute provided, in pertinent part, as follows:

"In any case where the superior court finds that a public

safety department has violated any of the provisions of this

chapter, the court shall render appropriate injunctive or other

extraordinary relief to remedy the violation and to prevent

future violations of a like or similar nature, including, but

not limited to, the granting of a temporary restraining order,

preliminary injunction, or permanent injunction from taking

any punitive action against the public safety officer."

90.     Each plaintiff named herein contends that the conduct of the named defendants in this cause of action, in violating the provisions of Government Code §3305, was a malicious action designed to injure them specifically.

91.     Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government Code §3305.

92.     Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his or her actual damages, including, but not limited to, compensatory (economic) damages such as loss of income and lost future earning capacity, and general (non-economic) damages such as monetary recovery for physical, mental, and emotional damages. These damages are in an amount according to proof at the trial of this action. In the event that each plaintiff named herein were to apply for employment with another law enforcement agency, the adverse comments entered into their respective police personnel files are required by law to be shared with the prospective employing agency. Adverse comments would, in all likelihood, prevent the plaintiff from obtaining a job in law enforcement for life.

93.     Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to proof at the trial of this action.

94.     Each plaintiff named herein therefore prays for extraordinary relief directed to the custodian of the police personnel file(s) of the named plaintiffs herein to purge the file of all adverse comments, information and data that was entered into the file in violation of the provisions of Government Code §3305. This relief is requested pursuant to the provisions of Government Code §3309.5(d)(1) as set forth above.

95.     The provisions of the POBRA are, pursuant to Government Code §3300 and §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore request an award of attorney fees and costs pursuant to the private attorney general doctrine provisions of Code of Civil Procedure §1021.5.

## FIFTH CAUSE OF ACTION

**(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3308- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100)**

39

96.     Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 95 as though fully set forth.

97.     At all times herein mentioned, Government Code §3308 of the POBRA was in full force and effect. This statute provided as follows:

> "No public safety officer shall be required or requested for
> purposes of job assignment or other personnel action to disclose
> any item of his property, income, assets, source of income,
> debts or personal or domestic expenditures (including those of
> any member of his family or household) unless such information
> is obtained or required under state law or proper legal procedure,
> tends to indicate a conflict of interest with respect to the
> performance of his official duties, or is necessary for the employing
> agency to ascertain the desirability of assigning the public safety
> officer to a specialized unit in which there is a strong possibility
> that bribes or other improper inducements may be offered."

98.     Each plaintiff named herein was questioned about, and was required to disclose information regarding, his or her "property, income, assets, source of income, debts or personal or domestic expenditures (including those of any member of his family or household)" during the polygraph examinations and background investigations. In fact, some of the named plaintiffs herein were informed that they "failed" the polygraph examinations and/or background investigations, and were precluded from being "laterally transferred" into deputy sheriff positions on the basis of alleged "financial irresponsibility".

99.     Regardless of whether a particular plaintiff was disqualified because of his or her "financial irresponsibility", the requirement that each plaintiff named herein respond to questions about his or her "property, income, assets, source of income, debts or personal or domestic expenditures (including those of any member of his family or household)" during the polygraph examinations and background investigations violated the provisions of the POBRA at Government Code §3308, and caused each plaintiff named herein damages under

the provisions of the statutory schemes.

100.   Each named plaintiff herein was not a "new hire" and was an existing police officer who had rights under the POBRA.  Moreover, similarly situated deputy sheriffs from Defendant LA COUNTY SHERIFF'S DEPARTMENT were not required to submit to polygraph examinations and/or background investigations in which questions about their financial condition were required to be answered, and where objectionable responses caused them to lose their jobs as sworn police officers.

101.   At all times herein mentioned, Government Code §3309.5(e) was in full force and effect.  This statute provided, in pertinent part, as follows:

> "In addition to the extraordinary relief afforded by
> this chapter, upon a finding by a superior court that
> a public safety officer department, its employees,
> agents, or assigns, with respect to acts taken within
> the scope of employment, maliciously violated any
> provision of this chapter with the intent to injure the
> public safety officer, the public safety department
> shall, for each and every violation, be liable for a civil
> penalty not to exceed $25,000 to be awarded to the
> public safety officer whose right or protection was
> denied and for reasonable attorney's fees as may be
> determined by the court.  If the court so finds, and
> there is sufficient evidence to establish actual damages
> by the officer whose right or protection was denied,
> the public safety department shall also be liable for
> the amount of actual damages...."

102.   At all times herein mentioned, Government Code §3309.5(d)(1) was in full force and effect.  This statute provided, in pertinent part, as follows:

> "In any case where the superior court finds that a public

safety department has violated any of the provisions of this

chapter, the court shall render appropriate injunctive or other

extraordinary relief to remedy the violation and to prevent

future violations of a like or similar nature, including, but

not limited to, the granting of a temporary restraining order,

preliminary injunction, or permanent injunction from taking

any punitive action against the public safety officer."

103.    Each plaintiff named herein contends that the conduct of the named defendants in this cause of action, in violating the provisions of Government Code §3308, was a malicious action designed to injure them specifically.

104.    Further, each plaintiff named herein is concerned that his or her police personnel file or other file kept for personnel purposes contains information about his or her financial situation and/or condition which was obtained unlawfully according to the express provisions of Government Code §3308. To the extent necessary, each plaintiff named herein prays for extraordinary relief from the court to purge his or her personnel file of any information whatsoever (positive or negative) about his or her financial condition and/or situation. This relief is requested pursuant to the provisions of Government Code §3309.5(d)(1) as set forth above.

105.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a civil penalty of up to $25,000 as a result of the defendants' malicious violation of Government Code §3308, in that the defendants violated the POBRA by requiring each named plaintiff herein to respond to questions about his or her financial condition and/or situation at the polygraph examinations and at the background investigations.

106.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to his or her actual damages, including, but not limited to, compensatory (economic) damages such as loss of income and lost future earning capacity, and general (non-economic) damages such as monetary recovery for physical, mental, and emotional damages. These damages are in an amount according to proof at the trial of this action. In the event that each plaintiff

named herein were to apply for employment with another law enforcement agency, the adverse comments entered into their respective police personnel files are required by law to be shared with the prospective employing agency. Adverse comments would, in all likelihood, prevent the plaintiff from obtaining a job in law enforcement for life.

107.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to proof at the trial of this action.

108.   The provisions of the POBRA are, pursuant to Government Code §3300 and §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore request an award of attorney fees and costs pursuant to the private attorney general doctrine provisions of Code of Civil Procedure §1021.5.

## SIXTH CAUSE OF ACTION

**(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL BILL OF RIGHTS- BLANKET WAIVERS OF RIGHT TO VIEW POLICE PERSONNEL FILE AS PERMITTED UNDER GOVERNMENT CODE § 3306.5(a-d) ARE UNLAWFUL- BY ALL PLAINTIFFS AGAINST DEFENDANTS COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES POLICE DEPARTMENT, AND DOES 1 THROUGH 100)**

109.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 108 as though fully set forth.

110.   At all times herein mentioned, Government Code §3306.5(a-d) was in full force and effect. This statute provided as follows:

> "(a) Every employer shall, at reasonable times and at reasonable intervals, upon the request of a public safety officer, during usual business hours, with no loss of compensation to the officer, permit that officer to inspect personnel files that are used or have been used to determine that officer's qualifications for

employment, promotion, additional compensation, or termination or other disciplinary action.

(b) Each employer shall keep each public safety officer's personnel file or a true and correct copy thereof, and shall make the file or copy thereof available within a reasonable period of time after a request therefor by the officer.

(c) If, after examination of the officer's personnel file, the officer believes that any portion of the material is mistakenly or unlawfully placed in the file, the officer may request, in writing, that the mistaken or unlawful portion be corrected or deleted. Any request made pursuant to this subdivision shall include a statement by the officer describing the corrections or deletions from the personnel file requested and the reasons supporting those corrections or deletions. A statement submitted pursuant to this subdivision shall become part of the personnel file of the officer.

(d) Within 30 calendar days of receipt of a request made pursuant to subdivision (c), the employer shall either grant the officer's request or notify the officer of the decision to refuse to grant the request. If the employer refuses to grant the request, in whole or in part, the employer shall state in writing the reasons for refusing the request, and that written statement shall become part of the personnel file of the officer."

111.   On information and belief, each plaintiff named herein was required by Defendants LA COUNTY and LA SHERIFF'S DEPARTMENT to waive in writing his or her right under Government Code §3306.5 and its subdivisions to inspect and/or comment on the information placed into his or her police personnel file before he or she was permitted to take the polygraph examination and to participate in the background investigation.

112.   Moreover, any "waiver" signed by each named plaintiff herein was invalid

1   because it was not "voluntary" in the true sense of the word.  The penalty for not agreeing to

2   sign the "waiver" was that he or she would lose his or her job as an existing police officer

3   and, further, would not be eligible to attempt to mitigate his or her damages by finding and

4   obtaining "civilian" employment within Defendant LA COUNTY.

5        113.   On information and belief, each named plaintiff herein alleges that a blanket

6   waiver of the provisions of Government Code §3306.5 and its subdivisions has been declared

7   unlawful by the California Supreme Court in its decision in *County of Riverside v. Superior*

8   *Court (Madrigal)* (2002) 27 Cal.4th 743.

9        114.   Because each named plaintiff was required to waive in writing his or her right

10  under Government Code §3306.5 and its subdivisions to inspect and/or comment on the

11  information placed into his or her police personnel file before he or she was permitted to take

12  the polygraph examination and to participate in the background investigation, each named

13  plaintiff herein was denied the rights of that POBRA statute and is entitled to the remedies

14  provided in this statutory scheme.

15       115.   At all times herein mentioned, Government Code §3309.5(e) was in full force

16  and effect.  This statute provided, in pertinent part, as follows:

17              "In addition to the extraordinary relief afforded by

18              this chapter, upon a finding by a superior court that

19              a public safety officer department, its employees,

20              agents, or assigns, with respect to acts taken within

21              the scope of employment, maliciously violated any

22              provision of this chapter with the intent to injure the

23              public safety officer, the public safety department

24              shall, for each and every violation, be liable for a civil

25              penalty not to exceed $25,000 to be awarded to the

26              public safety officer whose right or protection was

27              denied and for reasonable attorney's fees as may be

28              determined by the court.  If the court so finds, and

1                 there is sufficient evidence to establish actual damages

2                 by the officer whose right or protection was denied,

3                 the public safety department shall also be liable for

4                 the amount of actual damages...."

5        116.    At all times herein mentioned, Government Code §3309.5(d)(1) was in full

6 force and effect. This statute provided, in pertinent part, as follows:

7                 "In any case where the superior court finds that a public

8                 safety department has violated any of the provisions of this

9                 chapter, the court shall render appropriate injunctive or other

10                 extraordinary relief to remedy the violation and to prevent

11                 future violations of a like or similar nature, including, but

12                 not limited to, the granting of a temporary restraining order,

13                 preliminary injunction, or permanent injunction from taking

14                 any punitive action against the public safety officer."

15        117.    Each plaintiff named herein contends that the conduct of the named defendants

16 in this cause of action, in violating the provisions of Government Code §3306.5(a-d), was a

17 malicious action designed to injure them specifically.

18        118.    Further, each plaintiff named herein is concerned that his or her police

19 personnel file or other file kept for personnel purposes contains information about his or her

20 polygraph examinations results, background investigation results, and medical and/or

21 psychological exam results, which was obtained unlawfully according to other express

22 provisions of the POBRA set forth in this Complaint. To the extent necessary, each plaintiff

23 named herein prays for extraordinary relief from the court to purge his or her personnel file

24 of any information whatsoever (positive or negative) about any negative information in the

25 respective personnel files. This relief is requested pursuant to the provisions of Government

26 Code §3309.5(d)(1) as set forth above.

27        119.    Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

28 civil penalty of up to $25,000 as a result of the defendants' malicious violation of

46

1   Government Code §3308, in that the defendants violated the POBRA by requiring each

2   named plaintiff herein to respond to questions about personal information at the polygraph

3   examinations and at the background investigations, and also at the medical and psychological

4   examinations.

5       120.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to

6   his or her actual damages, including, but not limited to, compensatory (economic) damages

7   such as loss of income and lost future earning capacity, and general (non-economic) damages

8   such as monetary recovery for physical, mental, and emotional damages.  These damages are

9   in an amount according to proof at the trial of this action.  In the event that each plaintiff

10  named herein were to apply for employment with another law enforcement agency, the

11  adverse comments entered into their respective police personnel files are required by law to

12  be shared with the prospective employing agency.  Adverse comments would, in all

13  likelihood, prevent the plaintiff from obtaining a job in law enforcement for life.

14      121.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her

15  counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according

16  to proof at the trial of this action.

17      122.   The provisions of the POBRA are, pursuant to Government Code §3300 and

18  §3301, intended for a public benefit.  The attorneys for each named plaintiff herein therefore

19  request an award of attorney fees and costs pursuant to the private attorney general doctrine

20  provisions of Code of Civil Procedure §1021.5.

21

22              **SEVENTH CAUSE OF ACTION**

23      **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

24      **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3304(b)-**

25      **BY ALL PLAINTIFFS AGAINST DEFENDANTS LOS ANGELES COUNTY,**

26      **LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND DOES 1**

27      **THROUGH 100, INCLUSIVE)**

28      123.   Plaintiffs realleges and incorporate herein those matters contained in

                                                                    47

paragraphs 1 through 122 as though fully set forth.

124.   At all times herein mentioned, Government Code §3304(b) was in full force and effect.  This statute provided as follows:

> "No punitive action, nor denial of promotion on grounds
> other than merit, shall be undertaken by any public agency
> against any public safety officer who has successfully
> completed the probationary period that may be required by
> his or her employing agency without providing the public
> safety officer with an opportunity for administrative appeal."

125.   On information and belief, the term "punitive action", as used in the POBRA statutory scheme, includes a termination or demotion or suspension from a law enforcement agency, or a loss of rank, pay or grade within the law enforcement agency.

126.   All named plaintiffs herein were subjected to a "punitive action" under the POBRA statutory scheme.  There are several categories of plaintiffs who did not receive their administrative appeal rights under the POBRA.  The following is noteworthy in this regard:

A)     Most of the plaintiffs named in this Complaint were terminated from their POST-certified law enforcement positions with the OPS, either because they "failed" the initial polygraph examination and/or background investigation or because they were excluded for a medical or psychological reason from becoming a deputy sheriff.  In fact, for some of the plaintiffs who "failed" their polygraph examination(s) or background investigation, they were placed on a paid leave until September 30, 2010 and were told they were under "house arrest".  None of these disqualified plaintiffs received the required administrative appeal under the POBRA.

B)     Several of the plaintiffs named herein were also subjected to a "punitive action" under the POBRA statutory scheme even though they "passed" the initial polygraph examinations and background investigation, and even though they then "passed" the pre-employment medical and psychological examinations, thus being permitted to "laterally transfer" into a deputy sheriff position.  As to these few plaintiffs named herein, they lost

48

1  rank, pay, and/or grade upon being "accepted" into the deputy sheriff position.  For example,

2  if one of the plaintiffs meeting this criteria had been a sergeant in the OPS for 10 years, he or

3  she was not allowed to "laterally transfer" into the rank, pay, and grade of a deputy sheriff

4  sergeant position with 10 years of peace officer experience; instead, in this example, the

5  former OPS sergeant would be placed in a deputy sheriff II or deputy sheriff IV position,

6  earning substantially less than the equivalent pay of a deputy sheriff sergeant with 10 years

7  experience on the job in that position.  On information and belief, each of these situations

8  constituted a "punitive action" as defined under the POBRA.

9       C)    At least one of the plaintiffs named herein was terminated because

10  there were misconduct allegations pending when he was working for the OPS and he had

11  never been accorded his administrative appeal rights under the POBRA.

12      127.   Most, if not all of the named plaintiffs herein who were informed they had

13  "failed" the initial polygraph examination(s) and/or background investigation were

14  disqualified for events or circumstances which occurred more than one year from the date of

15  their polygraph examinations(s) and/or background investigation.  And, further, these same

16  plaintiffs herein had already taken polygraph examinations and had background

17  investigations before becoming POST-certified, sworn OPS officers where alleged

18  disqualifying events were disclosed.  Thus, for example, one of the plaintiffs named in the

19  age-protected class lawsuit was a highly placed management law enforcement officer in the

20  OPS, and was disqualified because he allegedly smoked marijuana at some time before

21  becoming a police officer.  This same plaintiff, however, had been a police officer for over

22  20 years, he was POST-certified, and the information that he had smoked marijuana in the

23  past had been disclosed during his prior polygraph examination and background investigation

24  as a pre-condition of becoming an OPS sworn police officer.  Under the circumstances, that

25  particular disqualification violated the POBRA provision in Government Code §3304(d)(1)

26  to the effect "no punitive action....shall be undertaken for any act, omission, or other

27  allegation of misconduct if the investigation or allegation is not completed within one year of

28  the public agency's discovery....of the allegation of an act, omission, or other misconduct."

128.   Most, if not all, of the plaintiffs named herein appealed the grounds of their termination, either by unsuccessfully appealing to the Department of Human Resources of Defendant LA COUNTY or unsuccessfully asking the Civil Service Commission for a hearing.  Defendant LA COUNTY took the position that the POBRA did not apply to these job actions.  In fact, the process of directing all appeals of the disqualifications to the Department of Human Resources of Defendant LA COUNTY and/or to the Civil Service Commission was in and of itself a violation of the POBRA, since it meant that "civilian" employees of Defendant LA COUNTY and the public were unlawfully made privy to police personnel information that should not have been subject to disclosure under Penal Code §832.7 and the "official information" privileges of the Evidence Code.

129.   As noted, Government Code §3304(b) required each of the plaintiffs named herein, regardless of whether or not they ultimately became deputy sheriffs, to be provided with an "administrative appeal".  None of the plaintiffs herein were in fact provided with an opportunity for an administrative appeal, a "liberty interest" hearing, or an equivalent due process hearing as required under the POBRA.

130.   The extraordinary remedy provisions of Government Code §3309.5(d)(1) are inadequate to redress the injuries and damages incurred by the named plaintiffs herein insofar as preventing "punitive action" without the opportunity for an administrative appeal, since the "punitive action" has already been taken against the named plaintiffs herein and the court has no jurisdiction to order the named defendants herein to receive an administrative appeal after the damage has been done.  Therefore, only monetary damages can adequately address the injuries sustained by each named plaintiff herein as a result of having a "punitive action" taken against him or her before having an opportunity for an administrative appeal or equivalent-type due process hearing.  Nevertheless, each plaintiff named herein therefore prays for extraordinary relief directed to the custodian of the police personnel file(s) of the named plaintiffs herein to purge the file of all adverse comments, information and data that was entered into the file as a proximate result of the due process violation of the provisions of Government Code §3304(b).  This relief is requested pursuant to the provisions of

50

1  Government Code §3309.5(d)(1) as set forth above.

2      131.   At all times herein mentioned, Government Code §3309.5(e) was in full force

3  and effect.  This statute provided, in pertinent part, as follows:

4              "In addition to the extraordinary relief afforded by

5              this chapter, upon a finding by a superior court that

6              a public safety officer department, its employees,

7              agents, or assigns, with respect to acts taken within

8              the scope of employment, maliciously violated any

9              provision of this chapter with the intent to injure the

10             public safety officer, the public safety department

11             shall, for each and every violation, be liable for a civil

12             penalty not to exceed $25,000 to be awarded to the

13             public safety officer whose right or protection was

14             denied and for reasonable attorney's fees as may be

15             determined by the court.  If the court so finds, and

16             there is sufficient evidence to establish actual damages

17             by the officer whose right or protection was denied

18             the public safety department shall also be liable for

19             the amount of actual damages...."

20     132.   At all times herein mentioned, Government Code §3309.5(d)(1) was in full

21  force and effect.  This statute provided, in pertinent part, as follows:

22             "In any case where the superior court finds that a public

23             safety department has violated any of the provisions of this

24             chapter, the court shall render appropriate injunctive or other

25             extraordinary relief to remedy the violation and to prevent

26             future violations of a like or similar nature, including, but

27             not limited to, the granting of a temporary restraining order,

28             preliminary injunction, or permanent injunction from taking

51

1          any punitive action against the public safety officer."

2          133.   Each plaintiff named herein contends that the conduct of the named defendants

3   in this cause of action, in violating the provisions of Government Code §3304(b), was a

4   malicious action designed to injure them specifically.

5          134.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

6   civil penalty of up to $25,000 as a result of the defendants' malicious violation of

7   Government Code §3304(b).

8          135.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to

9   his or her actual damages, including, but not limited to, compensatory (economic) damages

10  such as loss of income and lost future earning capacity, and general (non-economic) damages

11  such as monetary recovery for physical, mental, and emotional damages.  These damages are

12  in an amount according to proof at the trial of this action.  In the event that each plaintiff

13  named herein were to apply for employment with another law enforcement agency, the

14  adverse comments entered into their respective police personnel files are required by law to

15  be shared with the prospective employing agency.  Adverse comments would, in all

16  likelihood, prevent the plaintiff from obtaining a job in law enforcement for life.

17         136.   As to the substantial majority of the named plaintiffs herein who were

18  informed that they had "failed" their initial polygraph examination(s) and/or background

19  investigation, their disqualifications (i.e. "punitive actions") were based on allegations of acts

20  or misconduct occurring more than one year before the polygraph examination(s) and

21  background investigation. These same plaintiffs had become sworn POST-certified police

22  officers after each had taken a prior polygraph examination and had submitted to a prior

23  background investigation where the allegation of misconduct or omission had been disclosed

24  and had been waived by Defendant LA COUNTY (i.e. by accepting them into  law

25  enforcement employment as a sworn police office with full knowledge of the alleged act of

26  misconduct or omission).  Consequently, the named defendants herein breached the one-year

27  statute of limitations on each occasion where a named plaintiff herein was disqualified

28  because he or she allegedly "failed" the polygraph examination because of an alleged act or

                                                                                        52

1  omission more than one year before the polygraph examination/ background investigation.

2  In each instance, that breach warrants an award of actual damages, a civil penalty of up to

3  $25,000, and reasonable attorney's fees pursuant to POBRA and the private attorney general

4  doctrine.

5       137.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her

6  counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according

7  to proof at the trial of this action.

8       138.   Additionally, the provisions of the POBRA are, pursuant to Government Code

9  §3300 and §3301, intended for a public benefit.  The attorneys for each named plaintiff

10  herein therefore request an award of attorney fees and costs pursuant to the private attorney

11  general doctrine provisions of Code of Civil Procedure §1021.5.

12

13                    **EIGHTH CAUSE OF ACTION**

14     **(VIOLATIONS OF THE PUBLIC SAFETY OFFICERS PROCEDURAL**

15     **BILL OF RIGHTS- VIOLATION OF GOVERNMENT CODE §3304(b)-**

16     **UNLAWFULLY REQUIRED BLANKET WAIVERS OF POBRA RIGHTS**

17     **TO ACCEPT "VOLUNTARY DEMOTIONS" TO CIVILIAN POSITIONS**

18     **WITHIN COUNTY- BY  THE PLAINTIFFS NAMED BELOW AGAINST**

19     **DEFENDANTS LOS ANGELES COUNTY, LOS ANGELES COUNTY**

20     **SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 100, INCLUSIVE)**

21       139.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

22  1 through 138 as though fully set forth.

23       140.   At all times herein mentioned, Government Code §3304(b) was in full force

24  and effect.  This statute provided as follows:

25                "No punitive action, nor denial of promotion on grounds

26                other than merit, shall be undertaken by any public agency

27                against any public safety officer who has successfully

28                completed the probationary period that may be required by

53

1   his or her employing agency without providing the public

2   safety officer with an opportunity for administrative appeal."

3       141.   On information and belief, the term "punitive action", as used in the POBRA

4   statutory scheme, includes a termination from a sworn police officer position or a demotion

5   to another position within Defendant LA COUNTY.

6       142.   In an attempt to demonstrate that it was a benevolent employer, Defendant LA

7   COUNTY selectively "attempted" to find "civilian" jobs within the County to replace the

8   sworn police officer jobs that many of the plaintiffs named herein were losing.

9       143.   One of these "civilian" positions was a Custody Assistant position.  In LA

10  COUNTY, a Custody Assistant fulfills the same function as a deputy sheriff in the County

11  Jail network.  Both Custody Assistants and deputy sheriffs wear a badge and a uniform,

12  however, the deputy sheriff is a sworn police officer position under Penal Code §830.1 and a

13  Custody Assistant is not.  Custody Assistants cannot carry concealed weapons and cannot

14  make arrests, whereas deputy sheriffs can be armed and do make arrests.  Custody Assistants

15  also earn substantially less money and enjoy considerably less benefits than a deputy sheriff.

16      144.   Another of these "civilian" positions is a Sheriff's security assistant.  Security

17  assistants earn considerably less than even Custody Assistants and, also, are not armed and

18  do not make arrests.  They are not sworn police officers.

19      145.   Many of the named plaintiffs herein who had been informed they had "failed"

20  the polygraph examination, and/or the background investigation, and/or the medical

21  examination, and/or the psychological examination, were offered "civilian" positions as a

22  Custody Assistant, a Sheriff's security assistant, or some other clerical job with LA

23  COUNTY.  Many of the named plaintiffs herein, recognizing that their law enforcement

24  careers had been forever destroyed by the named defendants herein, did what they had to do

25  to support their families and "accepted" these civilian positions.  The alternative was

26  becoming homeless or going on welfare or futilely attempting to seek police officer jobs with

27  other law enforcement agencies with a tainted record.

28      146.   The named plaintiffs in this cause of action are as follows: MICHAEL

54

1  GAMST, CHRISTIE ACOSTA, PAUL ARROYO, FABIAN BARRAZA, YOLANDA

2  CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL,

3  DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS,

4  CHRISTOPHER GERAKIOS, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY

5  HERNANDEZ, DAVID JUST, LLOYD NELSON, JR., BINII NGUYEN, ERIC PENA,

6  STEVEN PRIETO, VICTOR RAMIREZ, DARREN ROBINSON, JUSTIN RUSSELL, JAE

7  SEUNG, WAI HENG SOOHOO, EUGENIO STEWART, ARTURO VALENCIA,

8  ROBERT VIEIRA, RYAN WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW

9  ZAMORA, JOSE ZAMORA

10      147.   On information and belief, Defendant LA COUNTY required each of the

11  named plaintiffs in this cause of action to sign a waiver document agreeing to accept a

12  "*voluntary* demotion".  Some of the named plaintiffs herein registered an objection to signing

13  the document and were informed they would lose their job if they did not sign it.  The waiver

14  documents which they were required to sign were by no means "voluntary".

15      148.   On information and belief, the named plaintiffs herein contend that, given the

16  position of Defendant LA COUNTY to the effect the "civilian" jobs in fact represented a

17  demotion, this demotion following closely on the heels of their disqualification from a sworn

18  police officer position was another violation of the POBRA.  As noted in this cause of action

19  and elsewhere in this Complaint, Government Code §3304.5(b) provides that a "punitive

20  action" (which includes a demotion) cannot be taken against a police officer without the

21  officer being afforded an opportunity for an administrative appeal or equivalent-type due

22  process hearing.  Each plaintiff named herein was not provided with the required opportunity

23  for an administrative appeal or equivalent-type due process hearing before the "punitive

24  action" of a demotion was taken and before they were required to sign a waiver form

25  indicating that their acceptance of a "civilian" position in LA County was a "voluntary

26  demotion".

27      149.   Further, at all times herein mentioned, requiring the named plaintiffs herein to

28  sign a "voluntary demotion" waiver in order to be employed in civilian positions in LA

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   COUNTY was in effect a blanket waiver of their respective rights under the POBRA and

2   was unlawful pursuant to *County of Riverside v. Superior Court (Madrigal)* (2002) 27

3   Cal.4th 743.

4       150.   Because each named plaintiff was required to waive in writing his or her right

5   under Government Code §3304.5(b) to have an administrative appeal or equivalent-type due

6   process hearing before being required to take a "civilian" job where he or she had to sign a

7   blanket "voluntary demotion" waiver,  each named plaintiff herein was denied the rights of

8   that POBRA statute and is entitled to the remedies provided in this statutory scheme.

9       151.   At all times herein mentioned, Government Code §3309.5(e) was in full force

10  and effect.  This statute provided, in pertinent part, as follows:

11                  "In addition to the extraordinary relief afforded by

12                  this chapter, upon a finding by a superior court that

13                  a public safety officer department, its employees,

14                  agents, or assigns, with respect to acts taken within

15                  the scope of employment, maliciously violated any

16                  provision of this chapter with the intent to injure the

17                  public safety officer, the public safety department

18                  shall, for each and every violation, be liable for a civil

19                  penalty not to exceed $25,000 to be awarded to the

20                  public safety officer whose right or protection was

21                  denied and for reasonable attorney's fees as may be

22                  determined by the court.  If the court so finds, and

23                  there is sufficient evidence to establish actual damages

24                  by the officer whose right or protection was denied,

25                  the public safety department shall also be liable for

26                  the amount of actual damages...."

27      152.   At all times herein mentioned, Government Code §3309.5(d)(1) was in full

28  force and effect.  This statute provided, in pertinent part, as follows:

56

1               "In any case where the superior court finds that a public

2               safety department has violated any of the provisions of this

3               chapter, the court shall render appropriate injunctive or other

4               extraordinary relief to remedy the violation and to prevent

5               future violations of a like or similar nature, including, but

6               not limited to, the granting of a temporary restraining order,

7               preliminary injunction, or permanent injunction from taking

8               any punitive action against the public safety officer."

9      153.   Each plaintiff named herein contends that the conduct of the named defendants

10 in this cause of action, in violating the provisions of Government Code §3304(b) was a

11 malicious action designed to injure them specifically.

12      154.   Further, each plaintiff named herein requests extraordinary relief to the extent

13 that the court mandates that the so-called "voluntary demotions" are unlawful and would

14 prevent Defendant LA COUNTY from taking any action to enforce and/or rely on those

15 waivers in the future.  This relief is requested pursuant to the provisions of Government Code

16 §3309.5(d)(1) as set forth above.

17      155.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to a

18 civil penalty of up to $25,000 as a result of the defendants' malicious violation of

19 Government Code §3304(b).

20      156.   Pursuant to Government Code §3309.5(e), each plaintiff herein is entitled to

21 his or her actual damages, including, but not limited to, compensatory (economic) damages

22 such as loss of income and lost future earning capacity, and general (non-economic) damages

23 such as monetary recovery for physical, mental, and emotional damages.  These damages are

24 in an amount according to proof at the trial of this action.  Because of the violation of this

25 section of the POBRA, in combination with the violation of other sections of the POBRA as

26 set forth elsewhere in this Complaint, it is unlikely that the plaintiffs named herein who are

27 not currently working as deputy sheriffs will be able to find law enforcement jobs with any

28 other agency.

57

157.   Pursuant to Government Code §3309.5(e), each plaintiff herein, or his or her counsel, is entitled to his or her reasonable attorney's fees and costs in an amount according to proof at the trial of this action.

158.   The provisions of the POBRA are, pursuant to Government Code §3300 and §3301, intended for a public benefit. The attorneys for each named plaintiff herein therefore request an award of attorney fees and costs pursuant to the private attorney general doctrine provisions of Code of Civil Procedure §1021.5.

## NINTH CAUSE OF ACTION

**(VIOLATIONS OF FEDERAL CIVIL RIGHTS– ACTION UNDER 42 U.S.C. §§1983, ET SEQ.,- BY THE PLAINTIFFS NAMED BELOW AGAINST THE INDIVIDUAL DEFENDANTS NAMED BELOW AND AGAINST DOES 1 THROUGH 100 FOR THE UNLAWFUL TAKING OF A PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)**

159.   Plaintiffs realleges and incorporate herein those matters contained in paragraphs 1 through 158 as though fully set forth.

160.   This particular cause of action for violation of civil rights under 42 U.S.C. §1983, et seq. applies to the following named plaintiffs: MICHAEL GAMST, CHRISTIE ACOSTA, PAUL ARROYO, FABIAN BARRAZA, YOLANDA CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL, DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS, CHRISTOPHER GERAKIOS, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY HERNANDEZ, DAVID JUST, LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA, STEVEN PRIETO, VICTOR RAMIREZ, DARREN ROBINSON, JUSTIN RUSSELL, JAE SEUNG, WAI HENG SOOHOO, EUGENIO STEWART, ARTURO VALENCIA, ROBERT VIEIRA, RYAN WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW ZAMORA, JOSE ZAMORA.

58

161.   Most of these above-named individual plaintiffs lost their peace officer jobs because they were disqualified in the polygraph examination and/or background investigation process.  Some of these individual plaintiffs lost their peace officer jobs because they allegedly "failed" the medical and/or psychological examinations for one reason or another.  And, some of these individual plaintiffs lost their peace officer jobs because they allegedly stated inaccuracies in their medical questionnaire.

162.   This particular cause of action for violation of civil rights under 42 U.S.C. applies to the following named individual defendants who were background investigators and employees of Defendants LA COUNTY and LASD: LEE BACA, LARRY WALDIE, ED ROGNER, KEVIN HEBERT, WILLIAM FUJIOKA, PAMELA JOHNSON, GARY GREENWOOD, ANDREW JACOB, KEVIN ZABORNIAK, CECILIA RAMIREZ, JOE SALAS, JILL DESCHAMPS, REGINALD MEREDITH, RICHARD CONLEY, JR., WILLIAM KENNEDY, ROBERT ENGEL, DEPUTY BASS, KEITH SMITH, GARRETT, RALPH PLASENCIA, ANGELA HUNT, and DOES 1 through 100, inclusive,

163.   At all times herein mentioned, 42 U.S.C. §1983, et seq. were in full force and effect.  This statutory scheme was designed to prevent the deprivation of civil rights by individuals acting under the color of state or local law.

164.   Each of the named plaintiffs in this cause of action had been peace officers of the former OPS, a law enforcement agency operated under the aegis and jurisdiction of Co-Defendant LA COUNTY (which is not named as a party defendant in this cause of action).  When each of the named plaintiffs herein had been peace officers employed by the OPS, they were considered to be employees of Co-Defendant LA COUNTY.  Each were also considered to be employees of Co-Defendant LA COUNTY who could only be terminated for "good cause".  They were not "at will" employees who could be terminated with or without a good reason and with or without notice of that so-called "good reason".  Before each could be effectively termination from their peace officer position, each was entitled to some type of due process hearing ("Skelly-type" hearing or "liberty interest" hearing or any similar type of hearing with notice of the reasons for their particular dismissal from the

59

1  employment of Co-Defendant LA COUNTY and with an ability to challenge the so-called
2  reasons before an impartial and neutral fact-finder and decision-maker).

3        165.   Each of the named plaintiffs in this cause of action had a legitimate claim of
4  entitlement to their respective careers as a peace officer, which, plaintiffs contend, gave rise
5  to a protected property interest that imposed a significant limitation on the discretion of the
6  individual decision-makers.  This property interest arose both under state law and under the
7  Fifth Amendment to the United States Constitution.

8        166.   Each of the named plaintiffs in this cause of action also had a legitimate claim
9  of entitlement to their reputation interest as peace officers.  This reputation interest also
10  imposed a significant limitation on the discretion of the individual decision-makers.

11        167.   Each of the named plaintiffs in this cause of action were subjected to dismissal
12  as peace officers because of allegations arising from their required submission to one or more
13  polygraph examinations and to a background investigation.  Each of the named plaintiffs in
14  this cause of action therefore claim that they had and/or have a liberty interest in their
15  employment and in their reputation which is protected by the Due Process Clause of the
16  Fourteenth Amendment to the United States Constitution, since their ultimate dismissal
17  effectively precluded each of them from future work in their chosen profession.  In the case
18  of each plaintiff named herein, the stated reason(s) for their dismissal as peace officers
19  became part and parcel of their police personnel file and/or other file kept for personnel
20  purposes, and, under the law of the State of California, these police personnel files would
21  have to be shared with prospective law enforcement agency employers in California.  Thus,
22  for example, one of the plaintiffs named herein was terminated from his sworn peace officer
23  position at the former OPS, and was therefore prevented from "laterally transferring" into an
24  equivalent deputy sheriff position with Co-Defendant LASD  because of so-called "illegal
25  drug use".  His polygrapher and/or background investigator had apparently concluded that he
26  had smoked marijuana when he was a young adult before becoming a peace officer with the
27  OPS.  In all likelihood, a finding that a deputy sheriff/ background investigator with a
28  prestigious law enforcement organization like Co-Defendant LASD had concluded that this

60

1    plaintiff was disqualified because of "illegal drug use" would, in effect, be a "death knell" to
2    future employment with any other law enforcement agency. Co-defendant LASD itself
3    excluded some of the named plaintiffs herein because of alleged "poor employment history",
4    in that they had either been terminated or had not been hired with another law enforcement
5    agency other than the OPS (i.e. before they became OPS officers).

6        168.   At all times herein mentioned, the individual defendants named herein were
7    employees, agents, and/or representatives of Co-Defendants LA COUNTY and/or LASD.
8    Consequently, each named individual defendant herein was operating under the color and
9    authority of law.

10       169.   Further, at all times herein mentioned, the individual defendants named herein
11   were decision-makers in determining which former OPS officers would be dismissed from
12   their peace officer jobs.

13       170.   At no time did any of the individual defendants named herein provide the
14   individual plaintiffs named herein with due process of law as required before an unlawful
15   taking of a property interest and a reputation interest.

16       171.   Each of the individual defendants named in this cause of action violated the
17   civil rights of the named plaintiffs in this action by making decisions that affected their Fifth
18   Amendment property interests and their reputation interests without providing each of them
19   with due process of law under the Fourteenth Amendment. This action is redressable under
20   42 U.S.C. §§1983, et seq., and also provides each named plaintiff with the full panoply of
21   remedies available under this federal statutory scheme.

22       172.   As a direct result of the unlawful deprivation of the federal civil rights arising
23   under this cause of action, each named plaintiff herein has sustained, and will continue to
24   sustain for a period of time, compensatory damages, including, but not limited to, loss of
25   income and lost future earning capacity, all in an amount according to proof at the trial of this
26   action.

27       173.   As a further direct result of the unlawful deprivation of the federal civil rights
28   under this cause of action, each named plaintiff herein has sustained, and will continue to

1  sustain for a period of time, general damages, including, but not limited to, loss of income

2  and lost future earning capacity, all in an amount according to proof at the trial of this action.

3      174.   Each named plaintiff is entitled to his or her reasonable attorney's fees

4  pursuant to 42 U.S.C. §1988(b).

5      175.   Each named individual defendant herein acted with malice, oppression, and

6  fraud, and therefore is liable in punitive damages in an amount according to proof at trial.

7

8                         **TENTH CAUSE OF ACTION**

9       **(DISABILITY DISCRIMINATION- BY THE PLAINTIFFS NAMED BELOW**

10       **AGAINST DEFENDANTS LOS ANGELES COUNTY AND LOS ANGELES**

11       **COUNTY SHERIFF'S DEPARTMENT- VIOLATIONS OF THE FEHA FOR**

12       **AUTHORIZING AND REQUIRING PRE-EMPLOYMENT AND/OR POST-**

13       **EMPLOYMENT OR MEDICAL AND PSYCHOLOGICAL EXAMINATIONS**

14       **RESULTING IN WRONGFUL TERMINATION OF PEACE OFFICER JOBS**

15       **OR A CREATION OF A RECORD IN THEIR POLICE PERSONNEL FILE**

16       **OR OTHER FILE KEPT FOR PERSONNEL PURPOSES)**

17      176.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

18  1 through 175 as though fully set forth.

19      177.   The following plaintiffs are named in this particular cause of action:

20  MICHAEL GAMST, CHRISTOPHER GERAKIOS, JESUS GUERRERO, JAE SEUNG,

21  EUGENIO STEWART, ARTURO VALENCIA, RYAN WELLS, ANDREW ZAMORA.

22  All of these plaintiffs named herein had to take *pre-employment* and/or post-employment

23  medical and psychological examinations.

24      178.   Defendants LA COUNTY and LASD have taken the position that the plaintiffs

25  named in this Complaint were to be treated as if they were "new hires" for the deputy sheriff

26  position at Defendant LASD.

27      179.   Each of the plaintiffs named in this cause of action had "passed" the polygraph

28  examination(s) and background investigation, and were then required to take a *pre-*

1  *employment* and/or a post-employment medical and psychological examination before being

2  "hired" as deputy sheriffs by Defendants LA COUNTY and LASD.  The plaintiffs named

3  herein were then disqualified from being transferred into the deputy sheriff position, or after

4  being transferred into the deputy sheriff position, either because they were believed to be

5  physically and/or mentally disabled, and/or because they were perceived to have been lying

6  as to the existence or non-existence of some prior medical or psychological condition when

7  filling out a medical questionnaire form.  In either case, their respective police personnel file

8  or other file kept for personnel purposes on each disqualified plaintiff was documented with

9  the disqualification.

10      180.   The plaintiffs named herein disagree with the position that they were "new

11  hires".   Regardless, each plaintiff named in this cause of action contends he or she was

12  unlawfully subjected to discrimination based on a perceived and/or actual physical and/or

13  mental disability.

14      181.   At all times herein mentioned, Defendant LASD had a written policy requiring

15  members of their Department to comply with the Americans With Disabilities Act of 1990

16  (hereafter ADA Act of 1990 or the ADA).  In pertinent part, the written policy of Defendant

17  LASD precluded giving *pre-employment* medical and psychological examinations.  In

18  pertinent part, this written policy provided as follows:

19      A)    "The (LASD) cannot refuse to hire or promote you because of your

20  disability if you can perform the essential functions of the job with an accommodation."

21      B)    "If you are applying for a job, (the LASD) may not ask you if you are

22  disabled or ask about the nature or severity of your disability.  (The LASD) can ask if you

23  can perform the essential functions of the job with or without reasonable accommodation.

24  The (LASD) can also ask you to describe or to demonstrate how, with or without reasonable

25  accommodation, you will perform the duties of the job."

26      C)    "(The LASD) may not require you to take a medical examination before

27  you are offered a job.  (The LASD) may condition a job offer on your passing a medical

28  examination, but only if all candidates for that job have to pass the examination.  However

1   (the LASD) may not reject you because of information about a disability that is revealed by

2   the medical examination, unless the reasons for rejection are job-related and consistent with

3   business necessity."

4          182.   Further, at all times herein mentioned, it was unlawful under the FEHA and

5   considered to be discrimination based on disability in the State of California for any

6   employer, including any law enforcement agency, to require applicants for a position to take

7   a *pre-employment* medical and/or psychological examination.

8          183.   Based on both their own written policies and on the law of the State of

9   California and the United States, as aforesaid, Defendants LA COUNTY and LASD acted

10  unlawfully by requiring *pre-employment* and/or post-employment medical and psychological

11  examinations, and caused the hereinafter described damage to the named plaintiffs in this

12  cause of action.

13         184.   As a result of the unlawful disability discrimination mentioned herein, each

14  named plaintiff in this cause of action is entitled to an award of both economic and non-

15  economic damages in an amount according to proof at the trial of this action.

16         185.   Moreover, for those named plaintiffs herein who ultimately were

17  "disqualified" from a peace officer position because of a perceived and/or actual disability as

18  a result of the administration of the *pre-employment* medical and psychological

19  examinations, documentation of the examination results was placed in their respective police

20  personnel file and/or other file kept for personnel purposes.  On information and belief,

21  Defendants unlawfully disseminated information about the disqualifications and reasons for

22  disqualification to individuals within Defendant LA COUNTY who should not have had

23  access to the information pursuant to Penal Code §832.7 and its subdivisions, and without

24  first complying with the provisions of Evidence Code §1043, thus also causing additional

25  economic and non-economic damage in an amount according to proof at the trial.

26         186.   Each plaintiff named in this cause of action, as well his counsel of record, is

27  entitled to an award of attorney's fees and reasonable costs in an amount according to proof

28  pursuant to Government Code §12965(b).

## ELEVENTH CAUSE OF ACTION

**(DISABILITY DISCRIMINATION- BY THE PLAINTIFFS NAMED BELOW AGAINST DEFENDANT LOS ANGELES COUNTY AND DEFENDANT LOS ANGELES COUNTY SHERIFF'S DEPARTMENT - VIOLATIONS OF THE FEHA FOR NOT AUTHORIZING AND REQUIRING "AGE APPROPRIATE" MEDICAL EXAMINATIONS RESULTING IN WRONGFUL TERMINATION OF PEACE OFFICER JOBS OR A CREATION OF A RECORD IN THEIR POLICE PERSONNEL FILE OR OTHER FILE KEPT FOR PERSONNEL PURPOSES)**

187.    Plaintiffs reallege and incorporate herein those matters contained in paragraphs 1 through 186 as though fully set forth.

188.    The named plaintiffs in this cause of action are:  MICHAEL GAMST, CHRISTOPHER GERAKIOS, JESUS GUERRERO, JAE SEUNG, EUGENIO STEWART, ARTURO VALENCIA, RYAN WELLS, ANDREW ZAMORA. All of these plaintiffs named herein were required to take medical and/or psychological examinations that were not "age appropriate", resulting in their termination from police officer positions.

189.    In this particular lawsuit, there are a total of 43 named plaintiffs.  As noted previously, 34 of those plaintiffs were disqualified, either because they did not "pass" the polygraph/ background process or because they disqualified for medical/ psychological reasons.  Of these 34 disqualified plaintiffs, 26 of them "failed" the polygraph/background, and 8 were medically/ psychologically disqualified.

190.    Each of the plaintiffs named in this cause of action had "passed" the polygraph examination(s) and background investigation, and were then required to take a *pre-employment* and/or post-employment medical and psychological examination before being "hired" as deputy sheriffs by Defendants LA COUNTY and LASD.  The plaintiffs named herein were then disqualified from being transferred into the deputy sheriff position, or after being transferred into the deputy sheriff position, either because they were believed to be physically and/or mentally disabled, and/or because they were perceived to have been lying

65

1 as to the existence or non-existence of some prior medical or psychological condition when

2 filling out a medical questionnaire form.  In either case, their respective police personnel file

3 or other file kept for personnel purposes was documented with the disqualification.

4     191.  At all times herein mentioned, each of the plaintiffs named in this cause of

5 action were qualified individuals with a disability, in that: (A) they were perceived by the

6 named defendants herein to have a disqualifying physical and/or mental disability; and/or,

7 (B) they each had a physical or mental disability under the FEHA that substantially impacted

8 a major life activity; and (C) they could nevertheless perform their respective essential duties

9 as a police officer with or without a reasonable accommodation.

10     192.  As previously noted herein, on or about December 15, 2009, it was represented

11 by Defendants LA COUNTY and LASD that the medical and psychological examinations to

12 be administered to those former OPS officers would be "age appropriate".

13     193.  Each plaintiff named herein was 39 years of age or younger as of September

14 30, 2010.  Although each plaintiff was not in an age-protected class under the FEHA or

15 equivalent federal law, nevertheless, each plaintiff named herein, due to his or her age and

16 due to his or her prior years of experience as a peace officer, was exposed for a significant

17 period of time to the harsh physical and/or mental demands of the job.  Generally, each would

18 be expected to have physical and/or mental conditions that were less optimal for police work

19 than those physical and/or mental conditions of a younger "new hire" who had to pass

20 physical agility and mental competency tests to even become a police officer at any agency in

21 the State of California.  Because Defendants LA COUNTY and LASD were treating the

22 former OPS officers as "new hires", it was critical that Defendants avoided the

23 discrimination based on disability classifications that would necessarily be expected to result

24 when experienced police officers were being evaluated in the same manner as if they were

25 high school or college graduates in their early 20's seeking their first police job.  The most

26 significant way to ensure that the plaintiffs named herein were not treated differently based

27 on their protected class characteristics was to ensure that "age appropriate" medical and

28 psychological examinations were administered.

66

194.   In fact, "age appropriate" medical and psychological examinations were not administered to the named plaintiffs in this cause of action, causing each plaintiff so named herein to be subjected to unlawful disability discrimination on account of his or her physical and/or mental disability.

195.   Moreover, already-employed deputy sheriffs of Defendant LASD who were of a similar age and experience as the named plaintiffs herein were not required to take the same medical and/or psychological examinations as a condition of keeping their peace officer jobs. The fact that the named plaintiffs herein were treated as "new hires" and had to take medical and psychological examinations that were not "age appropriate" led to a tremendous inequity and disparate impact on treatment of law enforcement employees of Defendant LA COUNTY. For example, one particular plaintiff was disqualified from a peace officer job because of not passing a phase of the hearing test; yet, other already-employed deputy sheriffs of a similar age and experience did not have to take this hearing test and, in fact, could have had a far worse hearing condition that would disqualify him or her from being a deputy sheriff.

196.   Each named plaintiff herein was subjected to unlawful disability discrimination under the FEHA because of the allegations set forth in this cause of action, and has been damaged thereby.

197.   As a result of the unlawful disability discrimination mentioned herein, each named plaintiff in this cause of action is entitled to an award of both economic and non-economic damages in an amount according to proof at the trial of this action.

198.   Moreover, for those named plaintiffs herein who ultimately were "disqualified" from a peace officer position because of a perceived and/or actual disability as a result of the administration of the pre-employment and non "age appropriate" medical and psychological examinations, documentation of the examination results was placed in their respective police personnel file and/or other file kept for personnel purposes. On information and belief, Defendants unlawfully disseminated information about the disqualifications and reasons for disqualification to individuals within Defendant LA COUNTY who should not

67

1 | have had access to the information pursuant to Penal Code §832.7 and its subdivisions, and

2 | without first complying with the provisions of Evidence Code §1043, thus also causing

3 | additional economic and non-economic damage in an amount according to proof at the trial.

4 |     199.  Each plaintiff named in this cause of action, as well his counsel of record, is

5 | entitled to an award of attorney's fees and reasonable costs in an amount according to proof

6 | pursuant to Government Code §12965(b).

7

8 | **TWELFTH CAUSE OF ACTION**

9 | **(DISABILITY DISCRIMINATION- BY THE PLAINTIFFS NAMED BELOW**

10 | **AGAINST DEFENDANTS LOS ANGELES COUNTY AND LOS ANGELES**

11 | **COUNTY SHERIFF'S DEPARTMENT - VIOLATIONS OF THE**

12 | **FEHA RESULTING IN WRONGFUL TERMINATION)**

13 |     200.  Plaintiffs reallege and incorporate herein those matters contained in paragraphs

14 | 1 through 199 as though fully set forth.

15 |     201.  The named plaintiffs in this cause of action are: MICHAEL GAMST,

16 | CHRISTOPHER GERAKIOS, JESUS GUERRERO, JAE SEUNG, EUGENIO STEWART,

17 | ARTURO VALENCIA, RYAN WELLS, ANDREW ZAMORA.

18 |     202.  Each of the plaintiffs named in this cause of action had "passed" the polygraph

19 | examination(s) and background investigation, and were then required to take a non-"age

20 | appropriate" pre-employment or post-employment medical and psychological examination as

21 | a condition of being "hired, or as a condition of remaining "hired", as deputy sheriffs by

22 | Defendants LA COUNTY and LASD. The plaintiffs named herein were then disqualified

23 | from being transferred into the deputy sheriff position, or after being transferred into the

24 | deputy sheriff position, either because they were believed to be physically and/or mentally

25 | disabled, and/or because they were perceived to have been lying as to the existence or non-

26 | existence of some prior medical or psychological condition when filling out a medical

27 | questionnaire form. In either case, their respective police personnel file or other file kept for

28 | personnel purposes was documented with the disqualification.

203.    At all times herein mentioned, each of the plaintiffs named in this cause of action were qualified individuals with a disability, in that: (A) they were perceived by the named defendants herein to have a disqualifying physical and/or mental disability; and/or, (B) they each had a physical or mental disability under the FEHA that substantially impacted a major life activity; and (C) they could nevertheless perform their respective essential duties as a police officer with or without a reasonable accommodation.

204.    At all times herein mentioned, each of the plaintiffs named in this cause of action were subjected to disability discrimination because they were ipso facto disqualified from the deputy sheriff position with Defendant LASD because of an actual and/or perceived physical or mental disability that did or did not substantially impact a major life activity under the FEHA, and because each of them could nevertheless perform their respective essential duties as a police officer with or without a reasonable accommodation.  Each plaintiff named in this cause of action alleges that this disqualification amounted to a wrongful termination in violation of public policy due to disability discrimination in breach of relevant state and federal law.

205.    At all times herein mentioned, each of the plaintiffs named in this cause of action were subjected to disability discrimination for physical, medical, and/or psychological conditions that did not constitute a bona fide occupational disqualifying factor from being a peace officer in the State of California.

206.    As a result of the unlawful disability discrimination mentioned herein, each named plaintiff in this cause of action is entitled to an award of both economic and non-economic damages in an amount according to proof at the trial of this action.

207.    Moreover, for those named plaintiffs herein who ultimately were "disqualified" from a peace officer position because of a perceived and/or actual disability as a result of the administration of the *pre-employment* or post-employment medical and psychological examinations, documentation of the examination results was placed in their respective police personnel file and/or other file kept for personnel purposes.  On information and belief, Defendants unlawfully disseminated information about the *disqualifications* and

69

1 reasons for disqualification to individuals within Defendant LA COUNTY who should not

2 have had access to the information pursuant to Penal Code §832.7 and its subdivisions, and

3 without first complying with the provisions of Evidence Code §1043, thus also causing

4 additional economic and non-economic damage in an amount according to proof at the trial.

5      208.   Each plaintiff named in this cause of action, as well his counsel of record, is

6 entitled to an award of attorney's fees and reasonable costs in an amount according to proof

7 pursuant to Government Code §12965(b).

8      209.   On information and belief, the aforesaid disability discrimination was

9 intentional, since Defendants LA COUNTY and LASD had an agenda to eliminate a

10 particular number of the former OPS officers.  Consequently, because those specific numbers

11 were not met in the initial phase of the process by disqualifying the former OPS officers

12 based on their respective polygraph examination(s) and/or background investigation,

13 additional numbers had to be eliminated through the medical and psychological examination

14 process.

15

16                          **THIRTEENTH CAUSE OF ACTION**

17      **(WILLFUL FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS TO**

18      **IDENTIFY REASONABLE ACCOMMODATIONS UNDER THE FEHA- BY**

19      **THE PLAINTIFFS NAMED BELOW AGAINST DEFENDANTS LOS**

20      **ANGELES COUNTY AND LOS ANGELES COUNTY SHERIFF'S**

21      **DEPARTMENT)**

22      210.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

23 1 through 209 as though fully set forth.

24      211.   The named plaintiffs in this cause of action are: MICHAEL GAMST,

25 CHRISTOPHER GERAKIOS, JESUS GUERRERO, JAE SEUNG, EUGENIO STEWART,

26 ARTURO VALENCIA, RYAN WELLS, ANDREW ZAMORA

27      212.   Each of the plaintiffs named in this cause of action had "passed" the initial

28 polygraph examination(s) and background investigation(s), but had been disqualified from

70

being permitted to transfer into a deputy sheriff position with Defendant LASD because of an actual and/or perceived physical or mental disability, or because they purportedly lied in completing a medical questionnaire form as to the existence or non-existence of a physical or mental condition.

213.   At all times herein mentioned, each of the plaintiffs named in this cause of action were qualified individuals with a disability, in that: (A) they were perceived by the named defendants herein to have a disqualifying physical and/or mental disability; and/or, (B) they each had a physical or mental disability under the FEHA that substantially impacted a major life activity; and (C) they could nevertheless perform their respective essential duties as a police officer with or without a reasonable accommodation.

214.   At all times herein mentioned, the FEHA statutory scheme was in full force and effect.  This statute, as well implementing codes and regulations, required that employers and employees engage in the interactive process in good faith for the purpose of identifying reasonable accommodations before terminating a qualified employee with either a physical and/or mental disability.

215.   Defendants LA COUNTY and LASD did not, at any time herein mentioned, engage in the interactive process in good faith to identify a reasonable accommodation for each plaintiff named herein so that he or she could retain his or her peace officer status and keep his or her law enforcement position.  Each named plaintiff in this cause of action was, at all times, willing to engage in the interactive process in good faith to identify a reasonable accommodation, but were thwarted in doing so by the named defendants herein.  For these plaintiffs in this cause of action, a reasonable accommodation was not to be placed into a "civilian" position with Defendant LA COUNTY.

216.   At all times herein mentioned, Defendants LA COUNTY and LASD took the position they were engaging in the interactive process in good faith, since some of the plaintiffs named herein were placed in "civilian" jobs in LA COUNTY, mostly at a reduced level of pay and benefits.  These defendants, however, refused to appreciate that comparing law enforcement careers with "civilian" careers was like comparing apples and oranges, and

71

1   that a willful failure to engage in the interactive process to identify reasonable

2   accommodations for otherwise qualified peace officers in the law enforcement field caused

3   substantial economic and non-economic damage to the plaintiffs named herein, all of whom

4   had devoted their lives and who had placed their lives on the line for the community.

5       217.   On information and belief, Defendants LA COUNTY and LASD, had they

6   engaged in the interactive process in good faith, could have reasonably accommodated the

7   perceived and/or actual disabilities of the named plaintiffs herein by allowing each of them to

8   retain their law enforcement status in some reasonable manner.

9       218.   As a result of the aforesaid willful refusal of the named defendants herein to

10  engage in the interactive process in good faith (for the purpose of identifying reasonable

11  accommodations), each named plaintiff in this cause of action was terminated and/or

12  disqualified from a law enforcement job and is entitled to an award of both economic and

13  non-economic damages in an amount according to proof at the trial of this action.

14      219.   Moreover, for those named plaintiffs herein who ultimately were

15  "disqualified" from a peace officer position because of a perceived and/or actual disability as

16  a result of the administration of the pre-employment and non "age appropriate" medical and

17  psychological examinations, documentation of the examination results was placed in their

18  respective police personnel file and/or other file kept for personnel purposes.  On information

19  and belief, Defendants unlawfully disseminated information about the disqualifications and

20  reasons for disqualification to individuals within Defendant LA COUNTY who should not

21  have had access to the information pursuant to Penal Code §832.7 and its subdivisions, and

22  without first complying with the provisions of Evidence Code §1043, thus also causing

23  additional economic and non-economic damage in an amount according to proof at the trial.

24      220.   Each plaintiff named in this cause of action, as well his counsel of record, is

25  entitled to an award of attorney's fees and reasonable costs in an amount according to proof

26  pursuant to Government Code §12965(b).

27      221.   On information and belief, the aforesaid refusal to engage in the interactive

28  process in good faith (for the purpose of identifying reasonable accommodations) was

72

1  intentional, since Defendants LA COUNTY and LASD had an agenda to eliminate a

2  particular number of the former OPS officers.  Consequently, because those specific numbers

3  were not met in the initial phase of the process by disqualifying the former OPS officers

4  based on their respective polygraph examination(s) and/or background investigation,

5  additional numbers had to be eliminated through the medical and psychological examination

6  process.

7

8                      **FOURTEENTH CAUSE OF ACTION**

9            **(INVASION OF PRIVACY- BROUGHT BY ALL THE PLAINTIFFS**

10           **NAMED BELOW AGAINST THE DEFENDANTS NAMED BELOW-**

11           **ARISING UNDER GOVERNMENT CODE §§ 815.2(a); 815.4, AND**

12           **815.6)**

13           222.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

14  1 through 221 as though fully set forth.

15           223.   This cause of action applies to plaintiffs named in this Complaint who did not

16  "pass" either their polygraph examination(s) and/or background investigation, and who were

17  excluded from retaining their peace officer jobs for such stated reasons as "poor employment

18  history", "integrity", "judgment", "financial irresponsibility", "illegal sex acts", "illegal drug

19  use", "criminal conviction", "criminal history", "gang association", "gang affiliation", and

20  other specified categories.  This cause of action also applies to those plaintiffs who "passed"

21  their polygraph examination(s) and background investigation, but were disqualified for

22  medical and/or psychological reasons.  This cause of action also applies to the following-

23  named plaintiffs who "passed" their polygraph examination(s) and background investigation,

24  but were later informed they were disqualified from retaining their peace officer jobs because

25  of allegedly lying in filling out their medical questionnaire forms.  The identities of the

26  individual plaintiff pursuing this cause of action are as follows: MICHAEL GAMST,

27  CHRISTIE ACOSTA, PAUL ARROYO, FABIAN BARRAZA, YOLANDA CABADA,

28  DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL, DAVID CUEVAS,

                                                                            73

1  ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS, CHRISTOPHER GERAKIOS,

2  JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY HERNANDEZ, DAVID JUST,

3  LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA, STEVEN PRIETO, VICTOR

4  RAMIREZ, DARREN ROBINSON, JUSTIN RUSSELL, JAE SEUNG, WAI HENG

5  SOOHOO, EUGENIO STEWART, ARTURO VALENCIA, ROBERT VIEIRA, RYAN

6  WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW ZAMORA, JOSE ZAMORA.

7       224.   This cause of action does not yet apply to those 9 listed plaintiffs who were

8  allowed to "laterally transfer" into a deputy sheriff position, and whose privacy was not

9  invaded, although later discovered facts may cause this cause of action to be amended to

10  include additional plaintiffs. Therefore, the following plaintiffs named in this Complaint are,

11  at this time, excluded from this cause of action: KEVIN ADAMS, RYAN BODILY,

12  MICHAEL GREENE, JOHN KLEEH II, JUAN LOZANO, JORGE LAZARO, XAVIER

13  RIVAS, ROBERT ROMERO, and MANUAL SANDOVAL.

14       225.   The following statutes are applicable to this cause of action because public

15  entities and its employees are involved: Government Code §815.2(a)—public entity liable for

16  injury proximately caused by an act or omission of the public entity within the scope of his or

17  her employment; Government Code §815.4—public entity liable for injury proximately

18  caused by independent contractor of the public entity under expressed circumstances; and,

19  Government Code §815.6—public entity under a mandatory duty imposed by statute

20  designed to protect against a particular kind of injury is liable for a failure to discharge its

21  duty under expressed circumstances;

22       226.   At all times herein mentioned, the plaintiffs named in this cause of action were

23  private persons and not actual or limited public figures.

24       227.   Defendant CAPTAIN KEVIN HEBERT, as the Director of Personnel

25  Administration of Co-Defendant LASD, and acting in concert with and pursuant to the

26  direction of Co-Defendants BACA, WALDIE, and ROGNER, wrote each of the named

27  plaintiffs in paragraph 254 a disqualifying letter, informing them that they had "failed" their

28  polygraph examination(s) and/or background investigations, and stated the reasons for their

1    reputed failure. In each case, these letters were mailed to the named plaintiffs in paragraph

2    254 by third parties acting on behalf of Captain HEBERT.

3         228. Each of the named plaintiffs mentioned in paragraph 254 were invited to

4    appeal from the disqualification to the Department of Human Resources of Defendant LA

5    COUNTY, and, in fact, many of them did. In appealing from the disqualification, each of

6    those named plaintiffs was required to republish the reasons stated for their disqualification

7    per the letter written by Defendant HEBERT. Those plaintiffs named herein who appealed

8    from the disqualification uniformly received back letters from Co-Defendant LISA

9    GARRETT, the Director of Personnel for Defendant LA COUNTY, and from Co-Defendant

10    RALPH PLASENCIA, a human resources analyst for the Personnel Department in

11    Defendant LA COUNTY, to the effect that their appeal had been denied and the reasons

12    stated for the denial. Accordingly, civilian employees of Defendant LA COUNTY were

13    permitted to see records that were supposed to be confidential pursuant to the Penal Code and

14    other pertinent statutes regarding the "official information" privilege in the Evidence Code,

15    all of which regulated the information that could be disclosed from police personnel files.

16         229. Further, as to some of those plaintiffs named herein, Defendant CEO

17    WILLIAM FUJIOKA signed public letters claiming that those plaintiffs were deceptive and

18    lying in filling out medical questionnaire forms. Private medical information was publically

19    disclosed in each of the letters of disqualification, which was a violation of the HIPAA

20    (Health Insurance and Portability and Accountability Act of 1996) rules regarding the privacy

21    of medical information.

22         230. Further, as to some of those plaintiffs named herein, Defendant CEO

23    WILLIAM FUJIOKA and Defendant KEITH SMITH, a Program Monitor for Occupational

24    Health Programs working under Defendant CEO FUJIOKA, wrote public letters to those

25    plaintiffs, informing them they had "failed" their psychological examination.

26         231. Moreover, in order to preserve some of the remedies requested in this

27    Complaint, counsel for the plaintiffs named herein were required to file Government Claims,

28    exhaust administrative appeals where necessary, and file administrative complaints alleging

75

1   discrimination with the DFEH. Therefore, additional public republications of the

2   unauthorized and unlawful disclosures of private police personnel information were

3   necessary in order preserve plaintiffs' entitlement to remedies and damages under state and

4   federal law.

5       232.   On information and belief, it appears that Defendant LA COUNTY and

6   Defendant LASD allowed private police and official information about the plaintiffs named

7   herein to be shared with their civilian employees. Thus, for example, in attempting to find

8   "civilian" jobs for the named plaintiffs herein who were disqualified from retaining their

9   peace officer status, private police and official information about the named plaintiffs herein

10   and their reasons for not "passing" the polygraph examinations and/or background

11   investigation were shared by police officers with civilian employees of Defendant LA

12   COUNTY who did not have either a right or need to know that information.

13       233.   Background investigators, many of whom have been named as defendants in

14   this Complaint, often shared private information disclosed in their investigation with un-

15   authorized persons. For example, a plaintiff in the second lawsuit (i.e. under age 40)

16   confidentially disclosed to his background investigator that the reason he may have appeared

17   to register "deceptive" on his polygraph examination to a question regarding domestic

18   violence was because he had cheated on his wife several years ago. That background

19   investigator then interviewed that particular plaintiff's wife and told her words to the effect

20   of "did you know that your husband is cheating on you?"

21       234.   At the time that each of these named plaintiffs named in this cause of action

22   took the polygraph examination(s) and were the subject of a background investigation, or

23   were taking pre-employment medical and psychological examinations, they were sworn

24   police officers whose personnel files and any information about their private medical

25   information, their history and their abilities as police officers was absolutely protected from

26   disclosure to the public by Penal Code §832.7 and by the official information privileges

27   contained in Evidence Code §§1040, 1043, 1044, 1045, 1046, and 1047 (or any of the

28   particular subdivisions of the statute). In fact, the Attorney General of the State of California

76

1  has opined that the willful disclosure of private and official information about a police officer
2  is criminal act punishable as a misdemeanor.

3      235.   At all times herein mentioned, Penal Code §832.7 and its subdivisions, and as
4  the statute was interpreted by court cases, police officers have a legitimate expectation of
5  privacy in their police personnel records.  Such police personnel records, for example, are
6  protected from disclosure under the California Public Records Act and access to those
7  records cannot be obtained for any reason until a *Pitchess*-type motion is filed and approved
8  by the court.

9      236.   At all times herein mentioned, Penal Code §832.7 and its subdivisions, as well
10 as the so-called "official information" privilege disclosure statutes under Evidence Code
11 §§1040, 1043, 1044, 1045, 1046, and 1047 (or any of the particular subdivisions of the
12 statute), or the federal law regarding HIPAA disclosure procedures and violations, all
13 imposed a mandatory duty under Government Code §815.6 to protect against the public
14 disclosure of private information about police officers.  The disclosure of private police
15 officer information which seriously invades the privacy of the particular police officer, and
16 which ultimately causes economic and non-economic damages to that officer, is a particular
17 risk of the breach of Penal Code §832.7 and its subdivisions, Evidence Code §§1040, 1043,
18 1044, 1045, 1046, and 1047 (or any of the particular subdivisions of the statute), or the
19 federal law regarding HIPAA disclosure procedures and violations.  Therefore, the
20 defendants named herein are liable for invading that privacy of each plaintiff named herein
21 pursuant to the mandatory duty provisions of Government Code §815.6, both for their own
22 actual liability and for any vicarious liability arising from acts within the course and scope of
23 employment pursuant to Government Code §820.2 through §823.

24     237.   The aforesaid disclosures in violation of statute invaded the privacy of each of
25 the named plaintiffs herein, was the type of subject matter which would be highly offensive
26 to any reasonable person, were not newsworthy, and painted each of them in a false light,
27 causing the hereinafter described damages.

28     238.   At no time did any plaintiff named in this cause of action give consent to, nor

77

1   did they waive, the tortious and unlawful acts of any of the named defendants herein.

2        239.   At all times herein mentioned, the aforesaid actions were not privileged, were

3   not subject to any immunity, and were in fact accomplished by malice.

4        240.   As a direct result of the aforesaid invasion of privacy, each plaintiff named

5   herein has sustained, and will continue to sustain for a period of time, economic and non-

6   economic damages in an amount according to proof at the trial of this action.

7        241.   This cause of action for invasion of privacy applies to the institutional

8   entities—Defendant LA COUNTY and Defendant LASD.  It also applies to the following-

9   named individual defendants—SHERIFF LEE BACA, UNDERSHERIFF LARRY

10  WALDIE, CAPTAIN ED ROGNER, CAPTAIN KEVIN HEBERT, CEO WILLIAM

11  FUJIOKA, REGINALD MEREDITH, LISA GARRETT, RALPH PLASENCIA, KEITH

12  SMITH, ANGELA HUNT, and DOES 1 through 100, inclusive.

13       242.   The actions of each of the following named individual defendants was

14  accomplished by malice, oppression, and fraud, and therefore plaintiffs named herein are

15  entitled to an award of punitive damages against these individual defendants.  Those

16  individuals named in connection with this punitive damage allegations are: SHERIFF LEE

17  BACA, UNDERSHERIFF LARRY WALDIE, CAPTAIN ED ROGNER, CAPTAIN

18  KEVIN HEBERT, CEO WILLIAM FUJIOKA, REGINALD MEREDITH, LISA

19  GARRETT, RALPH PLASENCIA, KEITH SMITH, ANGELA HUNT,  and DOES 1

20  through 100, inclusive.

21

22                    **EIFTEENTH CAUSE OF ACTION**

23            **(BREACH OF DUTY OF FAIR REPRESENTATION- BROUGHT**

24            **BY THE PLAINTIFFS NAMED BELOW AGAINST PROFESSIONAL**

25            **PEACE OFFICERS ASSOCIATION aka PPOA AND DOES 1**

26            **THROUGH 100)**

27       243.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

28  1 through 242 as though fully set forth.

                                                                  78

244. The plaintiffs named in this cause of action are as follows: MICHAEL GAMST, CHRISTIE ACOSTA, PAUL ARROYO, FABIAN BARRAZA, YOLANDA CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL, DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS, CHRISTOPHER GERAKIOS, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY HERNANDEZ, DAVID JUST, LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA, STEVEN PRIETO, VICTOR RAMIREZ, DARREN ROBINSON, JUSTIN RUSSELL, JAE SEUNG, WAI HENG SOOHOO, EUGENIO STEWART, ARTURO VALENCIA, ROBERT VIEIRA, RYAN WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW ZAMORA, JOSE ZAMORA.

245. At all times herein mentioned, Defendant PROFESSIONAL PEACE OFFICER'S ASSOCIATION was also known as PPOA.

246. At all times herein mentioned, Defendant PPOA was a union which represented employees of law enforcement organizations of Defendant LA COUNTY.

247. On information and belief, most of the plaintiffs named in this cause of action were, up until on or about September 30, 2010, dues paying members of Defendant PPOA. Some of the plaintiffs named herein, particularly those who were allowed to "laterally transfer" into a probationary deputy sheriff position stopped paying dues to PPOA before on or about September 30, 2010.

248. Defendant PPOA, at the time the plaintiffs named in this cause of action were dues-paying members, represented officers from the Office of Public Safety, law enforcement employees of the Department of the Coroner, law enforcement employees of the LA County District Attorney's Office, and law enforcement employees of the LA COUNTY SHERIFF'S DEPARTMENT (rank of Sergeant and above). Defendant PPOA did not represent rank-and-file deputy sheriffs of the LA COUNTY SHERIFF'S DEPARTMENT.

249. At all times herein mentioned, the leadership of Defendant PPOA were law enforcement employees of the rank of Sergeant and above in Defendant LA COUNTY SHERIFF'S DEPARTMENT. Thus, for example, in the 2009-2010, the President of the

79

1  PPOA union was Brian Moriguchi, a lieutenant in Defendant LA COUNTY SHERIFF'S

2  DEPARTMENT.

3        250.    Within one year prior to and then after December 15, 2009, when the aforesaid

4  public meetings took place regarding the job action against the former OPS, there existed a

5  major conflict of interest between the plaintiffs named in this cause of action and Defendant

6  PPOA. The major conflict could be described as follows: As noted, the <u>Frank</u> lawsuit was an

7  employment discrimination action arising under the FEHA, whereby former OPS plaintiffs

8  had successfully alleged at the trial court level that the inequities in their treatment, pay, and

9  benefits vis-a-vis their deputy sheriff counterparts at Defendant LASD was due to racial

10 and/or national origin discrimination. After the large monetary verdict in the <u>Frank</u> lawsuit

11 was reversed at the appellate court level, LA COUNTY supervisors led by Don Knabe and

12 Michael Antononovich "made good" on their public promise to retaliate against the OPS by

13 announcing the job action of the so-called "workforce reduction/ merger" on or about

14 December 15, 2009. Defendant LA COUNTY, in concert with the management hierarchy at

15 Defendant LASD, had an agenda to eliminate many of the former OPS law enforcement

16 officers and "demote" them either to civilian jobs or to fire them altogether because they (it)

17 believed that the OPS was a group of "misfits" and was an inferior law enforcement

18 organization to the Defendant LASD. Defendant PPOA was a union that was supposed to

19 fight for the rights of its OPS members, but the union itself was managed by law enforcement

20 employees of the Defendant LASD who themselves had to "report" Co-Defendants

21 ROGNER, WALDIE, BACA and others. In other words, the PPOA leadership was not

22 interested in standing up for the rights of its members who were OPS law enforcement

23 employees, particularly when this leadership also had to follow the orders of its own

24 employer who believed that the OPS were sub-standard law enforcement employees and who

25 was a driving force behind the "workforce reduction/ merger". On information and belief,

26 the leadership of Defendant PPOA, including, but not limited to, PPOA President Brian

27 Moriguchi was enlisted by management personnel at Defendant LA COUNTY and

28 Defendant LASD to "sell" the impending job action involving the OPS to *its* OPS members.

80

1    In fact, Defendant PPOA's leadership and board of directors publically supported the so-

2    called "workforce reduction/ merger", even after the job action was accomplished and the

3    PPOA leadership could see the damage it caused to its former OPS law enforcement

4    members.

5        251.   Defendant PPOA's leadership, including, but not limited to, President Brian

6    Moriguchi, made palpably false representations to the plaintiffs named in this cause of action

7    in order to secure any alleged waivers to participating in the process of first undergoing the

8    polygraph examination(s) and background investigation(s), and then undergoing a new

9    medical and psychological examination.  The following non-inclusive claims apply in this

10   regard:

11         A)   The leadership of Defendant PPOA, including, but not limited to, PPOA

12   President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that

13   the transition process of "eliminating" the OPS and participating in the process to be

14   employed as a deputy sheriff with Defendant LASD was going to be a "limited" polygraph

15   examination and background investigation.  The plaintiffs named in this cause of action were

16   told, and were led to believe, that the polygraph examination and background investigation

17   process would be "limited" to questions of their performance as peace officers when they

18   worked for the OPS.  The plaintiffs named in this cause of action were not told that the

19   polygraph examinations and background investigations would delve into their entire

20   childhood and adult lives, such as the type of polygraph examination and background

21   investigations that are provided to new hires of law enforcement agencies.  Defendant PPOA

22   represented, and the plaintiffs named in this cause of action were led to believe, that they

23   would not be treated as new hires and instead would be given full consideration as POST-

24   certified sworn peace officers.  The plaintiffs named in this cause of action were essentially

25   led to believe by their union management colleagues at Defendant PPOA that the polygraph

26   examinations and background investigation were merely a "formality" in the step to

27   becoming absorbed as deputy sheriffs with Defendant LASD.

28         B)   The polygraph examination(s) and background investigation(s) were not

81

1   a mere "formality" as promised by the leadership of Defendant PPOA.  For example, one of

2   the plaintiffs, who had been a good-performing POST-certified officer with the OPS, was

3   disqualified from transitioning into a deputy sheriff position because of "gang affiliation"—

4   his background investigator relied on a court document when the plaintiff was a juvenile that

5   had been "sealed" from all eyes by a Superior Court Judge.  Moreover, many of the plaintiffs

6   were hazed like fraternity pledges by their background investigators—e.g. one background

7   investigator (Defendant KEVIN ZABORNIAK named in the cause of action regarding

8   federal civil rights violations) hazed one 20-year plus OPS officer by telling her to report to a

9   room which was really a broom closet, causing Defendant ZABORNIAK and his other

10  boorish background investigator colleagues to break down into paroxysms of laughter.

11          C)      The leadership of Defendant PPOA, including, but not limited to, PPOA

12  President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that

13  the transition process would include "age appropriate" medical and psychological

14  examinations.  As noted elsewhere in this Complaint, those plaintiffs named herein who

15  "passed" the polygraph examination(s) and background investigation were required to take

16  medical and psychological examinations that were not "age appropriate".  The promise of

17  "age appropriate" medical and psychological examinations was false when made, and this

18  was a critical misrepresentation to the plaintiffs herein because: (1) all but a couple of them

19  were over the age of 40 years as of December 15, 2009, and (2) many of them did have some

20  medical issues which arose because of their age and, perhaps, because of the physical nature

21  and demands of their chosen career.

22          D)      The leadership of Defendant PPOA, including, but not limited to, PPOA

23  President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that

24  it was the position of Co-Defendant SHERIFF LEE BACA that those plaintiffs who

25  transitioned into deputy sheriff positions would not lose their rank, pay, and/or grade which

26  they had as OPS officers.  Thus, it was represented, for example, that if an OPS officer with

27  12 years seniority as a sergeant transitioned into Defendant LASD, he or she would take the

28  job and be paid as a sergeant with 12 years experience in the LASD.  In fact, all of the **18**

1   named plaintiffs in this lawsuit who were allowed to become officers with the LASD lost

2   rank, pay, and/or grade upon the transfer.

3           E)      The leadership of Defendant PPOA, including, but not limited to, PPOA

4   President Brian Moriguchi, misrepresented to the plaintiffs named in this cause of action that

5   PPOA would pay for their respective attorney's fees and legal costs in prosecuting any

6   necessary cause of action arising out of their loss of a peace officer job. Each of the

7   plaintiffs named in this cause of action have experienced a loss of their peace officer jobs,

8   either because they allegedly "failed" the polygraph examination(s) and background

9   investigation, or because they "failed" the non-"age appropriate" medical and/or

10  psychological examinations. After the job actions, Defendant PPOA designated and retained

11  two of the law firms traditionally used to represent its members (i.e. the law firm of Lackie,

12  Dammeier and McGill and Green and Shinee) to represent the affected plaintiffs. Defendant

13  PPOA, however, only agreed to pay for attorney's fees and legal costs of these two firms to

14  represent the plaintiffs named in this cause of action before the Civil Service Commission.

15  Defendant PPOA refused to pay for the attorney's fees and legal costs of these two firms to

16  represent the plaintiffs in causes of action related to violations of their rights under the

17  POBRA, under the FEHA or under Title VII, or under laws protecting civil rights.

18  Consequently, these union law firms, on specific instruction from PPOA, did not properly

19  advise plaintiffs of their rights under the POBRA, the FEHA, Title VII, and other potential

20  remedies for the job action. At the time of this agreement, Defendant PPOA was amply

21  aware that the adverse employment actions in this case could not be adequately addressed

22  through the Civil Service Commission, since the Civil Service Commission would only hold

23  hearings in the event that the particular job action was based on a Rule 25 violation (i.e. job

24  action based on a Rule 25 merit factor). As noted above, and more specifically, Defendant

25  PPOA also instructed its law firms not to address any violations of the POBRA or the FEHA

26  and, on information and belief, instructed these law firms to not advise the plaintiffs named

27  herein of their respective obligations to file timely Government Claims against Defendant LA

28  COUNTY and other applicable defendants arising from POBRA violations, or to file timely

83

1  administrative complaints with the DFEH to preserve their claims for protected class

2  discrimination, harassment, and retaliation.  Moreover, Defendant PPOA instructed its law

3  firms not to advise the plaintiffs herein that, if they did receive a civil service hearing, they

4  would otherwise be waiving their right and ability to seek and collect monetary damages for

5  protected-class discrimination, harassment, and retaliation under the FEHA.  Also, Defendant

6  PPOA actively instructed its designated law firms to "interfere" with plaintiffs' counsel

7  herein in filing Government Claims, administrative complaints with the DFEH, and in filing

8  this litigation (i.e. these designated law firms in fact did <u>not</u> follow the instruction of

9  Defendant PPOA to "interfere" with plaintiffs' current counsel).  Finally, upon written

10  demand by plaintiffs' counsel, Defendant PPOA refused to, and continues to refuse to pay

11  for, the attorney's fees and legal cost in prosecuting this litigation.

12      252.   At all times herein mentioned, Defendant PPOA, as a union for the plaintiffs

13  named in this cause of action, had a duty under the law to provide "fair representation" for

14  the plaintiffs.  Plaintiffs contend that Defendant PPOA, as set forth above and as according to

15  further proof in this litigation, breached this duty of "fair representation" to plaintiffs, thereby

16  causing the hereinafter described damages.

17      253.   As a direct consequence of the aforesaid breach of the duty of "fair

18  representation", plaintiffs demand that Defendant PPOA disgorge the union dues paid by

19  each plaintiff in an amount according to proof.

20      254.   As a further direct consequence of the aforesaid breach of the duty of "fair

21  representation", plaintiffs demand that Defendant PPOA pay for, and/or reimburse, them and

22  their counsel herein for the legal costs of preparing for, filing, and representing them in this

23  litigation.  Legal costs include, but are not limited to, filing fees, service of process fees,

24  motion fees, expert witness costs, costs of deposition transcripts, and other reasonable costs

25  which are customarily part of the litigation process.

26      255.   As a further direct consequence of the aforesaid breach of the duty of "fair

27  representation", each plaintiff named herein has sustained, and will continue to sustain for a

28  period of time in the future, compensatory damages and general damages in an amount

84

1    according to proof at the trial of this action.

2

3                        **SIXTEENTH CAUSE OF ACTION**

4    **(CCP 1085- ADMINISTRATIVE WRIT OF MANDAMUS**

5    **AND/OR BREACH OF CONTRACT- AGAINST DEFENDANT**

6    **LOS ANGELES COUNTY)**

7        256.   Plaintiffs reallege and incorporate herein those matters contained in paragraphs

8    1 through 255 as though fully set forth.

9        257.   At all times herein mentioned, Defendant LA COUNTY had a clear, present

10   and ministerial duty to comply with its own personnel rules and regulations, including, but

11   not limited to, Skelley-type hearings for its employees who are terminated or who suffer

12   adverse employment actions short of termination.

13       258.   The terminations of the following-named plaintiffs from their peace officer

14   jobs with LA COUNTY breached its own personnel rules and regulations:  MICHAEL

15   GAMST, CHRISTIE ACOSTA, PAUL ARROYO, FABIAN BARRAZA, YOLANDA

16   CABADA, DARREN COOPER, DANIEL CORTEZ, JR., RONALD CROMWELL,

17   DAVID CUEVAS, ALLEN DAVIS, BASET FATAH, ROBERT GALLEGOS,

18   CHRISTOPHER GERAKIOS, JESUS GUERRERO, VICTOR GUTIERREZ, ANTHONY

19   HERNANDEZ, DAVID JUST, LLOYD NELSON, JR., BINH NGUYEN, ERIC PENA,

20   STEVEN PRIETO, VICTOR RAMIREZ, DARREN ROBINSON, JUSTIN RUSSELL, JAE

21   SEUNG, WAI HENG SOOHOO, EUGENIO STEWART, ARTURO VALENCIA,

22   ROBERT VIEIRA, RYAN WELLS, EMMETT WILKS, JR., ROGER YU, ANDREW

23   ZAMORA, JOSE ZAMORA.

24       258.   "A civil service employee is entitled to a strict interpretation of the statutory

25   rules for dismissal." *Zeron v. City of Los Angeles* 67 Cal.App.4th 639 (1998).  Defendant LA

26   COUNTY, therefore, has a duty to reinstate Plaintiffs' employment as peace officers and to

27   also restore the loss of all back-pay and benefits.

28       259.   Plaintiffs have exhausted all administrative remedies to compel the relief

                                                                                      85

1   sought herein. Plaintiffs have no other plain, adequate or speedy remedies in the ordinary
2   course of law.  Plaintiffs, therefore, are beneficially interested in the compelling of the
3   ministerial duty of Defendant LA COUNTY, and as such is entitled to issuance of a writ
4   pursuant to California Code of Civil Procedure §§1085-1086.

5       260.   Plaintiffs have performed all conditions, covenants, and promises required on
6   their respective part to be performed in accordance with the terms and conditions of the
7   contract of employment.

8       261.   Plaintiffs were dismissed without just cause and/or suffered adverse
9   employment actions without being allowed a pre-deprivation Skelly-type hearing or a post-
10  deprivation hearing as required under the rules of Defendant LA COUNTY.  Defendant LA
11  COUNTY's violation of these mandatory regulations and rules constitutes a breach of its
12  contract with the plaintiffs named herein.  Absent Defendant LA COUNTY's clear breach of
13  its own material regulations and rules, the plaintiffs named herein would not have lost their
14  peace officer jobs and/or sustained adverse employment actions short of termination.

15      262.   Plaintiffs herein pray for the issuance of the required administrative writ to
16  reinstate Plaintiffs' jobs as peace officers and/or to enter orders requiring compensation for
17  back pay loss, including, but not limited to, retirement and other benefit calculations.

18

19      WHEREFORE, Plaintiffs pray for the following relief:
20  First and Second Causes of Action:
21      1.   For compensatory damages in an amount according to proof.
22      2.   For general damages in an amount according to proof.
23      3.   For reasonable attorney's fees and expenses pursuant to Government Code
24  §12965(b).
25  Third Through Eighth Causes of Action:
26      1.   For the maximum civil penalty of $25,000 for each malicious POBRA
27  violation as to each plaintiff, with each polygraph examination being a separate violation (as
28  prayed for in the Fifth Cause of Action).

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
77

2.   For actual (compensatory and general) damages in an amount according to proof.

3.   For any injunctive relief which the court can provide in its discretion under the POBRA.

4.   For reasonable attorney's fees and costs in prosecuting the case of each plaintiff, either under the POBRA and/or under the "private attorney general" doctrine as mandated in Code of Civil Procedure §1021.5.

Ninth Cause of Action:

1.   For compensatory damages in an amount according to proof.

2.   For general damages in an amount according to proof.

3.   For any injunctive relief which the court can provide in its discretion under a cause of action for violations of federal civil rights.

4.   For punitive damages against the individual defendants named and to be named in the Eleventh Cause of Action.

5.   For reasonable attorney's fees and expenses pursuant to 42 U.S.C. §1988.

Tenth Through Thirteenth Cause of Action:

1.   For compensatory damages in an amount according to proof.

2.   For general damages in an amount according to proof.

3.   For reasonable attorney's fees and expenses pursuant to Government Code §12965(b).

Fourteenth Cause of Action:

1.   For compensatory damages in an amount according to proof.

2.   For general damages in an amount according to proof.

3.   For punitive damages against the individual defendants named and to be named in this cause of action.

Fifteenth Cause of Action:

1.   For compensatory damages in an amount according to proof.

2.   For general damages in an amount according to proof.

3.   For reimbursement of legal fees and costs in pursuing this action.

87

**Sixteenth Cause of Action:**

1.     For the issuance of an administrative writ of mandamus reinstating plaintiffs to their law enforcement jobs or positions with back pay and other damages allowable by law.

**On All Causes of Action:**

1.     For costs of the suit herein incurred.

2.     For such other and further relief as this court may deem proper and just.

Dated:    March 21, 2011

LAW OFFICES OF JOEL W. BARUCH, PC

By _____

Joel W. Baruch, Co-Counsel for All Plaintiffs

**DEMAND FOR JURY TRIAL**

All Plaintiffs herein demand a trial by jury.

Dated:    March 21, 2011          LAW OFFICES OF JOEL W. BARUCH, PC

By _____

Joel W. Baruch, Co-Counsel for All Plaintiffs

88

1

## PROOF OF SERVICE BY OVERNIGHT DELIVERY

2

I am a citizen of the United States and employed in Los Angeles County, California.  I am

3

over the age of eighteen years and not a party to the within-entitled action.  My business address

4

is 555 South Flower Street, Fiftieth Floor, Los Angeles, California  90071-2300.  On May 9,

5

2011, I deposited with Federal Express, a true and correct copy of the within documents:

6

### NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

7

in a sealed envelope, addressed as follows:

8

9

Joel W. Baruch, Esq.
Nikki Fermin, Esq.
Law Offices of Joel W. Baruch, P.C.
2020 Main Street, Suite 900
Irvine, CA  92614

Thomas A. Pistone, Esq.
Eric Medel, Esq.
Mitchell Reichmann, Esq.
Aaron Watts, Esq.
Pistone & Wolder LLP
2020 Main Street, Suite 900
Irvine, CA  92614-8203

10

11

12

Following ordinary business practices, the envelope was sealed and placed for collection

13

by Federal Express on this date, and would, in the ordinary course of business, be retrieved by

14

Federal Express for overnight delivery on this date.

15

I declare under penalty of perjury under the laws of the State of California that the above

16

is true and correct.

17

Executed on May 9, 2011, at Los Angeles, California.

18

19

20

Elizabeth Tran

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV11- 707 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
    312 N. Spring St., Rm. G-8
    Los Angeles, CA 90012

[X] **Southern Division**
    411 West Fourth St., Rm. 1-053
    Santa Ana, CA 92701-4516

[ ] **Eastern Division**
    3470 Twelfth St., Rm. 134
    Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Gamst et al. | DEFENDANTS<br>County of Los Angeles et al. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Joel W. Baruch; Law Offices of Joel W. Baruch, P.C., 2020 Main St, Suite 900, Irvine, CA 92614  T: (949) 864-9662; Thomas A. Pistone; Pistone & Wolder LLP, 2020 Main St, Suite 900, Irvine, CA 92614  T: (949) 622-8980 | Attorneys (If Known)<br><br>Elwood Lui, Christopher Lovrien; Jones Day<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, CA 90071  Telephone (213) 489-3939 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ unspecified damages

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violations of the Fifth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. s. 1983 based on alleged adverse employment actions.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☒ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:    Case Number:    SACV11-00707

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s):  CV11 02589 JFW (Ex)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                             ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Unknown. | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Los Angeles County is a resident of Los Angeles County. Defendant Los Angeles County believes substantially all of the other defendants reside in Los Angeles County. | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All claims arose in Los Angeles County. | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): *Elwood Lui    Lp CT2*                   Date May 9, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |